Lloyd STOTTLEMIRE, Plaintiff,

v.

James C. CAWOOD and Parke Davis Company, Defendants.

Civ. A. No. 1356-58.

United States District Court
District of Columbia.

Jan. 29, 1963.

———◆———

Arthur L. Willcher, Washington, D. C., for plaintiff.

H. Mason Welch, Washington, D. C., for defendant James C. Cawood.

John L. Laskey, Washington, D. C., and John A. Bradshaw, Detroit, Mich., for defendant Parke Davis Co.

HOLTZOFF, District Judge.

This is an action to recover damages for negligence and wrongful death of a child brought against a physician and a manufacturer of drugs.

The salient facts are very simple. The deceased was a four year old child, who apparently had been sickly, suffering from a number of ailments for possibly a couple of years or more. After having been treated by a number of physicians in the course of her several ailments she was brought to Dr. James C. Cawood, one of the defendants in this action. He found that she was suffering from a sore throat and prescribed what is popularly known as a sulpha drug. Nothing more need be said about this feature of the case because it is not involved in the issues to be determined. About ten days later the child was brought to him again and he found that she was suffering from an ear infection. He prescribed an antibiotic known as chloromycetin. This was on June 14, 1957. The child continued in a course of illness, was eventually taken to Prince Georges County Hospital, and on September 26, 1957, the child died. The cause of death, according to some of the testimony at least, or the probable cause of death was aplastic anemia brought about as a result of deficiency of the bone marrow, which in turn was caused by the drug chloromycetin.

The crux of the case, however, is whether the doctor was guilty of any negligence or improper practice in prescribing chloromycetin. This question brings us to some of the fundamental principles governing the liability of physicians and surgeons to their patients. A physician or surgeon is required by law to exercise that degree of care and skill ordinarily exercised by the profession in the same line of practice in his own or similar locality. Failure to use such care and skill constitutes negligence. On the other hand, a physician or surgeon is not an insurer of health. He is not required to guarantee results. If he were, very few persons would venture to enter the medical profession. He undertakes only for the standard of skill possessed generally by others practicing in his field and for the care that they would give in similar circumstances. He must have latitude for exercise of reasonable judgment. He is not liable for an error of judgment unless the error is obvious or gross according to the prevailing practice of his profession.[1]

No inference of negligence may be drawn merely from the result of the physician's or surgeon's treatment. The burden of proof, as in all other cases, is on the plaintiff to establish by a fair preponderance of the evidence that the defendant was negligent, namely, that he departed from the standards just stated and was unskillful or negligent and that his want of skill or care caused injury to the patient.

What, then, is the evidence in this case on the crucial issue? The one and only expert witness on this issue was Dr. Charles Rath, who was called by the plaintiff. Dr. Rath testified that it was customary to use chloromycetin to combat a wide variety of infections, that it was widely used for that purpose, and that it was also used for minor infections; that, as is true of all medicines, there was a certain risk, and the risk had to be kept in mind by the physician. The greatest risk in connection with the use of chloromycetin, according to Dr. Rath, was the possibility of its causing aplastic anemia. However, he further testified that, according to some figures, in only one case out of 800,000 was aplastic anemia caused by chloromycetin. In other words, the risk was one chance out of 800,000.

The plaintiff offered some evidence to the effect that the defendant

1. Johnston v. Rodis, D.C., 151 F.Supp. 345; reversed on another ground, 102 U.S.App.D.C. 209, 251 F.2d 917.

Parke Davis Company circulated literature among members of the medical profession recommending that this drug should not be used for minor infections. The Court excluded this evidence insofar as Dr. Cawood is concerned, but admitted it only in connection with the claim against Parke Davis Company. According to a decision of the Supreme Court of Idaho, such evidence, if presented in competent form, may be admissible, Julien v. Barker, Idaho, 272 P.2d 718, 724. The difficulty in this case is, however, that such evidence was not presented in an admissible or competent form. The only evidence to that effect was a statement, in an answer to an interrogatory addressed to Parke Davis, to the effect that they distributed such literature. No copies of the literature were annexed or presented, nor was any competent evidence introduced to the effect that the literature was actually circulated. A mere *ex parte* statement in an answer to an interrogatory is admissible against the party answering the interrogatory, but it is not admissible in evidence against anyone else, especially as the person giving the answer is not subject to cross-examination.

Under the circumstances, the Court has no alternative and is constrained to direct a verdict in favor of the defendant physician.

As to Parke Davis Company, the claim against it is predicated on the contention that it failed to warn the public generally of alleged dangerous characteristics of this drug. It must be borne in mind that this was a prescription drug. It could not be obtained by anyone except on a doctor's prescription, presented at a drugstore. Consequently, there was no reason why there should be a warning of any dangerous possibilities given to the general public. This was held in Parker v. State, 201 Misc. 416, 105 N.Y. S.2d 735, 741. An entirely different rule would be applicable in connection with drugs sold over the counter to anyone who asked for them.

There is no proof whatever that no warning or caution was given to members of the medical profession. On the contrary, the only evidence which the plaintiff sought to introduce was to the effect that such literature was issued by the defendant Parke Davis Company.

For both of these reasons, a verdict will be directed in favor of the defendant Parke Davis Company.

Accordingly, the Court directs a verdict in favor of both defendants.