[Civ. No. 50561. Second Dist., Div. Four. Mar. 28, 1978.]

DOROTHY KELLEY DEPENBROK, Plaintiff and Respondent, v.
KAISER FOUNDATION HEALTH PLAN, INC., et al.,
Defendants and Appellants.

COUNSEL

Thelen, Marrin, Johnson & Bridges, Robert K. Worrell and Susan H. Schmid for Defendants and Appellants.

Roger Bentley for Plaintiff and Respondent.

OPINION

**KINGSLEY, J.**—Defendants appeal from a judgment against them in an action for medical malpractice. We reverse the judgment.

Plaintiff, a young woman of 21, had had two children by caesarean section; she was again pregnant and faced a third delivery. She was told by a doctor on the staff of defendant that any further such deliveries would be highly dangerous. The doctor recommended that, when the third caesarean was performed, she should have, at the same time, a bilateral tubal ligation. Plaintiff's testimony was that, during several conversations on the subject, the doctor told her that such an operation was "permanent and irreversible." Discussions with another staff doctor allegedly contained the same statement. The operation was performed but plaintiff became pregnant a few months later. That new pregnancy required her to have a therapeutic abortion and a second tubular surgery.

The case went to the jury on three theories: medical negligence; lack of informed consent; and breach of warranty. The jury brought in a general verdict for plaintiff in the amount of $22,500. A motion for new trial was denied.

On this appeal, defendants do not attack the instructions on negligence or on lack of informed consent.[1] The contentions here made are: (1) that

---

[1]Because defendants on this appeal do not raise any issues other than those set forth in the text, we omit discussion of the extensive testimony on the negligence and informed consent issues, beyond the comment that the evidence, although conflicting, was sufficient to support a verdict on either of the alternative theories.

However, as the Supreme Court said in *Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 238 [104 Cal.Rptr. 505, 502 P.2d 1]: "Since it is impossible to determine on which theory the jury verdict rested, we conclude it is reasonably probable there has been a miscarriage of justice. We therefore reverse the judgment."

it was error to instruct at all on the breach of warranty theory; (2) that, if such an instruction was proper, the one given misstated the law; and (3) that plaintiff's trial counsel was guilty of prejudicial misconduct in his closing argument to the jury. We reject the first contention; agree with the second; and deem discussion of the third unnecessary.

I

Relying primarily on *Cobbs* v. *Grant* (1972) 8 Cal.3d 229 [104 Cal.Rptr. 505, 502 P.2d 1], defendants contend that a recovery for medical malpractice can be had only on a theory of negligence. That reliance is misplaced. *Cobbs* involved a case submitted to a jury only on the theories of negligence and lack of informed consent. The Supreme Court reversed because it found that the record did not support a finding of negligence. It then discussed the informed consent theory. The trial court had phrased its instructions on the theory that lack of informed consent amounted to a battery. The holding was that, except where a surgeon performs an entirely different operation than the one discussed with the patient, lack of informed consent involves not battery but negligence. The language from the opinion relied on by defendants concerns only that issue; it was not directed to, and does not apply to, cases such as the one at bench where it is claimed that the surgeon had guaranteed a particular result.

In *Crawford* v. *Duncan* (1923) 61 Cal.App. 647 [215 P. 573], plaintiff alleged that she had consented to radium treatments in reliance on the express oral statement of defendant doctor "that no permanent scar of any kind would result from the treatment," a warranty that proved to be false. The court held that she was entitled to recover on the theory of a breach of an express contract, a cause of action on which the statute of limitations had not run.

In *Custodio* v. *Bauer* (1967) 251 Cal.App.2d 303 [59 Cal.Rptr. 463, 27 A.L.R.3d 884], the court considered the sufficiency, as against general demurrer, of a complaint for medical malpractice based on a variety of theories. One of those theories was a breach of an express contract that a proposed operation would result in sterilization of the plaintiff wife. After pointing out that, absent an express contract, there could be recovery only for negligence, the court said (at p. 315): "It is generally

recognized that, where there is proof of an express contract, the physician can be held liable for a promise to effect a cure or a certain result. (See Miller, The Contractual Liability of Physicians and Surgeons (1953) Washington U.L.Q. 413; Louisell & Williams, *op.cit.*, par. 8.10, p. 225; *Morgan v. Rosenberg* (Mo.App. 1963) 370 S.W.2d 685; *Noel v. Proud* (1961) 189 Kan. 6 [367 P.2d 61]; *Stewart v. Rudner* (1957) 349 Mich. 459, 467-469 [84 N.W.2d 816, 822-823]; *Robins v. Finestone* (1955) 308 N.Y. 543 [127 N.E.2d 330]; *Colvin v. Smith* (1949) 276 App.Div. 9 [92 N.Y.S.2d 794, 795].)"

We conclude that, if a plaintiff can prove to a properly instructed jury that a surgeon has clearly promised a particular result (as distinguished from a mere generalized statement that the result will be good),[2] and that the patient consented to an operation or other procedure in reliance on that promise, there can be recovery on the theory of warranty (or, to give the theory its more accurate name, breach of contract).

## II

At plaintiff's request, the trial court gave the following instruction: "One of the elements of a contract to perform a bilateral tubal ligation may be an affirmation of the fact or promise that such operation possess some characteristic results. Such an affirmation of fact or promise is called a warranty."

Defendants contend that that instruction was erroneous. We agree. Admittedly, the "characteristic" result of a bilateral tubular ligation is sterility. The problem that gives rise to this case is that, in a certain percentage of the cases, the result is not characteristic but noncharacteristic. The medical evidence is that, for a variety of reasons, some involving medical negligence and some not, sterilization does not result. The issue for the jury was not whether the doctors advising plaintiff had told her of the "characteristics" of the operation—that they had done and such advice would not have resulted in an action for breach of contract, although it might support an action on the theory of lack of informed consent. The issue was whether the doctors had told plaintiff that the operation would, without doubt, result in permanent and irreversible sterilization. The instruction as given diverted the attention of the jury from the real issue and was prejudicially erroneous.

---

[2]As in *Marvin v. Talbott* (1962) 216 Cal.App.2d 383 [30 Cal.Rptr. 893, 5 A.L.R.3d 908].

## III

Since we must reverse for the reason just given, we need not, and do not, consider the third contention of defendants—namely that the closing argument for plaintiff amounted to misconduct. That argument, if improper, is not likely to be repeated on a new trial.

The judgment is reversed.

Files, P. J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

The majority holds that the jury was instructed incorrectly on the issue of defendants' liability for breach of warranty, and that the giving of such instruction, even though there were other theories of liability advanced by the evidence, constituted a miscarriage of justice. The majority asserts that the miscarriage of justice results from the fact that it cannot be determined what theory of liability was adopted by the jury. It is the view of the majority that one instruction, given by the court to the jury at plaintiff's request, permitted the jury to award plaintiff a verdict on the breach-of-warranty theory without a finding that the defendants had expressly promised or warranted that a certain result would follow from the particular operation consented to by plaintiff.

It is my view that there were no errors with respect to the instructions given regarding the breach-of-warranty theory, and that the majority has engaged in unwarranted speculation and specious reasoning in concluding that the jury could have been misled by the instructions given by the court.

In the case at bench, the plaintiff's testimony was certain and definite. She testified that Dr. Shipkowitz told her "that by doing the tube ligation I [the plaintiff] would be permanently sterilized, that I [the plaintiff] would not have to worry anymore about becoming pregnant, that I would not have to be walking around like a time bomb, . . ." At another point in her examination, the plaintiff testified as follows: "Q. Had you ever heard of a bilateral tubal ligation before it was brought up by Dr.

Shipkowitz on that occasion? [¶] A. No. [¶] Q. Did he explain to you what the procedure was? [¶] A. No, not in detail. [¶] Q. Well, did he say anything on the subject at all, Mrs. Depenbrok? [¶] A. He said it was a sterilization process, that I would be sterile and therefore not have to worry about becoming pregnant again, *that I would be sterile and it would be permanent.*" (Italics added.)

In his testimony Dr. Shipkowitz contradicted this testimony of plaintiff by stating that, although he had no personal recollection of his conversation with plaintiff, he was sure that he had followed his usual custom in telling patients about the tubal ligation procedure. His testimony was as follows: "Q. A thousand? Do you talk to your patients before you do a tubal ligation customarily? [¶] A. Yes, I do. [¶] Q. And you have a custom which you engage in when you advise them about the procedure? [¶] A. Yes, I do. [¶] Q. As to what you tell them? Would you tell us what you customarily tell your patients? [¶] A. I customarily tell anybody I am proposing to do a tubal ligation on that *the procedure, itself, is a permanent procedure.* It is something that is nonreversible. It means once the incision is made and it is done, in fact to undo it is exceedingly difficult with very poor results. [¶] The second thing I tell them, that it is *not guaranteed. It does not come with any warranty.* There is a reported failure rate with tubal ligation in all theories, no matter what method is done there is approximately one percent failure rate. [¶] It tends to be somewhat higher at the time of repeat cesarean section." (Italics added.)

In view of the direct conflict between the testimony of the plaintiff and the testimony of Dr. Shipkowitz, one of the defendants, as to what was said preceding the tubal ligation procedure, I see no basis for the majority's conclusion that the jury could have been misled into thinking that plaintiff was entitled to recover even if the jury adopted the defendants' view as to the preoperation conversation between plaintiff and Dr. Shipkowitz rather than finding plaintiff's version of the conversation to be true.

The majority emphasizes the fact that in one of the instructions given by the court, at plaintiff's request, the language was used that an affirmation of fact or promise as a warranty could be an affirmation that the bilateral tubal ligation possessed "some characteristic results." The majority concludes, therefore, that a defendant's promise of *some*

characteristic results may not be construed as a clearly promised *particular* result.

The majority stresses this one instruction given by the trial judge at the request of plaintiff. However, the trial judge gave three instructions—not just one instruction—regarding the subject of warranty. It is my view that these three instructions, considered in the light of the diametrically opposed and contradictory testimony by the plaintiff and Dr. Shipkowitz as to what Dr. Shipkowitz promised as the *specific* result of the tubal ligation operation, constituted correct and nonmisleading instructions on the subject of warranty.

The one instruction which the majority criticizes was as follows: "One of the elements of a contract to perform a bilateral tubal ligation may be an affirmation of the fact or promise that such operation possess some characteristic results. Such an affirmation of fact or promise is called a warranty."

A second instruction which followed the first was as follows: "Any affirmation of fact or promise made by a defendant to the plaintiff which relates to the operation to be performed and becomes part of the basis of the bargain creates *an express warranty that the operation shall conform to the affirmation or promise.* Such affirmation or promise may be oral or in writing. [¶] No particular word or form of expression is necessary to create an express warranty, nor is it necessary that a defendant use formal words, such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." (Italics added.)

The third instruction which was given was as follows: "If you find that such an affirmation of fact or promise was made to plaintiff by Dr. Shipkowitz or by Dr. Sillette, and that the promise was breached, and that such breach of the promise was a proximate result of injury or damage to the plaintiff, then plaintiff is entitled to recover damages as against defendants."

The majority concedes that the issue which the jury was called upon to decide was whether the defendant physicians had told plaintiff that the bilateral tubal ligation procedure would, without any question, result in permanent and irreversible sterilization. The majority seems to conclude that since the court's instructions did not use some special magic expression, the jury had been misled. What the majority does in this case

is to exalt form over substance. I see no reasonable basis for concluding that the jury was being told that Dr. Shipkowitz' version of his conversation with the plaintiff about the operation could result in a verdict for plaintiff.

It is my view that any reasonable jury would understand from the court's three instructions regarding breach of warranty that the plaintiff would be entitled to recovery on a warranty theory only if the jury believed plaintiff's version of her conversation with Dr. Shipkowitz and not if the jury were to accept Dr. Shipkowitz' version of that conversation. If plaintiff's testimony was to be believed, Dr. Shipkowitz made a specific, clear and express promise to effect a specific result—permanent and irreversible sterilization—which was in the reasonable contemplation of both Dr. Shipkowitz and the plaintiff and was relied upon by the plaintiff.

In light of the third instruction on the theory of warranty—that Dr. Shipkowitz or Dr. Sillette had to make a promise to plaintiff which was *breached,* and that such breach was a proximate result of injury or damage to plaintiff, it is inconceivable that the jury could find for plaintiff unless the jury believed the promise to be that promise testified to by plaintiff. If the jury believed Dr. Shipkowitz' testimony, it could not reasonably interpret the court's instructions as authorizing a finding that a promise by Dr. Shipkowitz was *breached,* since his promise, according to him, did *not* indicate to plaintiff that, as a result of the tubal ligation operation, she would be guaranteed permanent freedom from getting pregnant.

The evidence and the instructions in the case at bench clearly justified the jury in finding that Dr. Shipkowitz had made to plaintiff a specific, clear and express promise to produce a specific result—permanent and irreversible sterilization; that he had breached this promise since she became pregnant following the tubal ligation operation, and that such breach was a proximate result of injury or damage to her. Consequently, I see no basis for reversing the judgment entered upon the jury's verdict in plaintiff's favor.

I would affirm the judgment.

Respondent's petition for a hearing by the Supreme Court was denied June 1, 1978. Bird, C. J., Mosk, J., and Manuel, J., were of the opinion that the petition should be granted.