JOSEPHINE CIRAFICI, Plaintiff-Appellant, *v.* SAMUEL GOFFEN, D.D.S., Defendant-Appellee.

First District (2nd Division)   No. 79-1407

Opinion filed June 10, 1980.

E. T. Cunningham, of Chicago, and Donna J. Cunningham, law student, for appellant.

Kathy P. Saxton and Barry G. Bollinger, both of Chicago (Wildman, Harrold, Allen & Dixon, of counsel), for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Josephine Cirafici, plaintiff, during a visit to her dentist, Dr. Samuel Goffen, defendant, at his office on November 13, 1973, was examined for a complaint of ill-fitting dentures. During defendant's examination, X rays of plaintiff's existing teeth and related bone structure were taken. He then allegedly induced her to permit him to install dental implants which, he purportedly told her, would eliminate the difficulties she was having with her dentures, and said that she would be able to eat "corn on the cob" and other foods for which natural teeth are particularly suitable. Plaintiff agreed to the operations and paid defendant $4,457 for implant services rendered between November 13, 1973, and May 3, 1974. The implants

were maintained in plaintiff's mouth from about May 3, 1974, until December 2, 1976, when defendant extracted them, acknowledging that they were a failure. He replaced them with a denture for which he charged plaintiff an additional $635. During the entire period in which plaintiff maintained the implants, they were loose, painful and prevented her from eating solid foods. The foregoing are factual allegations which emerge from count II of plaintiff's two-count complaint, with the incorporation of certain allegations from count I, the latter being based upon alleged dental negligence which remains to be tried in the continuing lawsuit between the parties.

The gravamen of plaintiff's count II is breach of contract and warranty. Count II admittedly contains no allegations of extra compensation as consideration therefor. On motion of defendant, count II was dismissed with an appropriate Supreme Court Rule 304(a) finding. (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).) From the dismissal plaintiff pursues this appeal, raising as the issue for review whether extra consideration must be paid by the patient when she and her dentist contract to achieve a specific result in order to make the contract enforceable. For the reasons hereinafter set forth we reverse and remand for further proceedings in the trial court.

Our analysis of the issue proceeds under the familiar rules of practice, procedure and construction. Section 4 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 4) requires that the Act be liberally construed toward the end that controversies may be determined according to the substantial rights of the parties, and section 33(3) of the Act requires liberal construction of the pleadings with a view toward doing substantial justice between the parties (Ill. Rev. Stat. 1977, ch. 110, par. 33(3)). Accordingly, the facts which we have earlier related must be accepted as admitted and true by virtue of the pleading dismissal, for the purposes of this appeal. (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 54, 391 N.E.2d 479; *Loughman Cabinet Co. v. C. Iber & Sons, Inc.* (1977), 46 Ill. App. 3d 873, 361 N.E.2d 379; *Logan v. Presbyterian-St. Luke's Hospital* (1968), 92 Ill. App. 2d 68, 74, 235 N.E.2d 851.) Further, all reasonable inferences which can be fairly drawn from the facts alleged must also be considered as true. (*Wilczynski v. Goodman; Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 290, 345 N.E.3d 503.) A cause of action should not be dismissed on the pleadings unless it clearly appears that plaintiff cannot recover under any set of facts which can be proved true under the pleadings. *Wilczynski v. Goodman; Kaplan v. Keith* (1978), 60 Ill. App. 3d 804, 906-07, 377 N.E.2d 279; *Country Mutual Insurance Co. v. Drendel* (1969), 116 Ill. App. 2d 466, 252 N.E.2d 757.

Plaintiff contends that she and her dentist contracted to achieve a specific result, an objective which was the reason for the formation of the

contract *ab initio* and which constitutes its most important term. She asserts that the contract is enforceable notwithstanding the absence of additional consideration in this context because defendant promised to achieve the objective as an inducement to her to contract with him. She maintains that the facts alleged in her complaint permit the inference that she had agreed to the dental implants in reliance upon defendant's promises that her difficulties with dentures would thereby be eliminated and that she would be able to eat foods as she would with normal teeth, and that his words were not therapeutic reassurances made by a physician to a worried patient in life-death or serious health situations such as existed in *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571, *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 191 N.E.2d 436, and *Wilczynski v. Goodman*, cases upon which defendant relies.

The issue thus raised is another in the recurring analyses of patients' rights as they exist in juxtaposition with physicians' responsibilities under the various circumstances in which they occur. As our supreme court said in *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 328, 178 N.E.2d 303, "These questions involve not only an interpretation of legal history, but a balancing of the legal policies of protecting the public in its dealings with the medical practitioner, and of protecting the practitioner in the pursuit of his highly essential profession from the fraudulent minded." It is true, as defendant contends, that Illinois has already somewhat addressed this subject in *Rogala*, *Gault*, and *Wilczynski*; yet, plaintiff's assertion that the facts in her case are significantly different from those obtaining in the cited cases is equally correct as will be presently seen.

The right of a patient and doctor to contract between themselves to effect a specific result has been recognized in many jurisdictions which have been faced with the problem, as revealed in *Zostautas v. St. Anthony De Padua Hospital* (1961), 23 Ill. 2d 326, 328-30, and in authorities set forth in American Law Reports Annotated, Third Series (43 A.L.R.3d 1221 (1972); 83 A.L.R.3d 15 (1978)). Nevertheless, a number of arguments have been raised against any recognition of a contract between patient and physician to "cure" a condition or secure a specified result, namely, that such contracts may retard the advancement of medical science and would thereby be contrary to public policy; they would cause physicians to practice defensive medicine; medicine being an inexact science, a "cure" or a specific result is often unattainable regardless of skill; the doctor's statements, being merely expressions of opinion, prediction, or optimistic prognostication of probable results should not be deemed actionable; and the physician in making his statements is simply "therapeutically reassuring" his patient by refraining from advising him of the manifold dangers attendant to any surgical operation, thereby

avoiding a detrimental psychic reaction in the patient that would obstruct successful treatment. (Annot., 43 A.L.R.3d 1221, 1226-27 (1972); Note, *Express Contracts to Cure: The Nature of Contractual Malpractice*, 50 Ind. L. J. 361, 366-68 (1975); Note, *Establishing the Contractual Liability of Physicians*, 7 U. Calif. at Davis L. Rev. 84, 89-92 (1974); Miller, *The Contractual Liability of Physicians and Surgeons*, 1953 Wash. U. L. Q. 413; Tierney, *Contractual Aspects of Malpractice*, 19 Wayne L. Rev. 1457 (1973).) It is for the foregoing reasons, as well as latent judicial skepticism, that contracts to effect a specific result or to "cure" a patient have been so strictly construed (*Sullivan v. O'Connor* (1973), 363 Mass. 579, 581-84, 296 N.E.2d 183, 185-86) and are recognized only when they reveal express undertakings, in contrast to implied contracts to exercise professional skill. *Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 102-05.

In confronting this issue, courts sometimes allude to the increased responsibilities or duties undertaken by physicians in warranting results. Part of the difficulty in identifying their respective obligations and responsibilities stems from the nature of the patient-physician relationship itself. Ordinarily, when one visits the physician or dentist for examination, advice and treatment, and the physician agrees to render the necessary services, one hardly thinks of the situation as a transaction of business in the ordinary sense, or as the making of a contract between them such as that which may be entered into in a marketplace setting: "[t]he application of the ordinary rules dealing with mercantile contracts to a contract entered into between a physician and a patient in our opinion is not justified." (*Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 109. *Cf. Stanley v. Chastek* (1962), 34 Ill. App. 2d 220, 180 N.E.2d 512.) In such situations, the only agreement in a contractual sense usually cognizable in this relationship is an implied contract that the physician or dentist will treat his patient with requisite skill and care in exchange for payment by the patient of the ordinary professional fee charged for the services rendered. (See, *e.g., Zostautas v. St. Anthony De Padua Hospital; Gault v. Sideman; Conklin v. Draper* (1930), 241 N.Y.S. 529, 229 App. Div. 2d 227, *affirmed* (1930), 254 N.Y. 620, 173 N.E. 892; *Hickey v. Slattery* (1926), 103 Conn. 716, 131 A. 558.) Failure to so perform ordinarily becomes the basis for an action in medical negligence, the most common form of suits for patients' redress.

How the express promise to "cure" or to effect a specific result differs from an implied promise to exercise requisite skill and care in treating a patient oftentimes appears to be more substantial in the attitude of the reviewing court than in the putative contractual legal bases. Some examples of express promises upheld serve to illustrate the point. A proposed resection of an ulcer patient's stomach which would take "* * * care of all your troubles * * * . You can eat as you want to, you

can drink as you want to * * * . You can throw your pill box away, your Maalox you can throw away * * * " was found actionable in *Guilmet v. Campbell* (1971), 385 Mich. 57, 62-63, 188 N.W.2d 601, 603-04. That an operation would make a hand 100 percent perfect was found to be a contractual promise in *Hawkins v. McGee* (1929), 84 N.H. 114, 146 A. 641. The statement that a cure would be effected by removal of a growth under a certain procedure was recognized as contractual in *Robins v. Finestone* (1955), 308 N.Y. 543, 127 N.E.2d 330. The assertion that a partial loss of hearing could be alleviated by an operation without impairment of the existing ability to hear was allowed to support an action in *Noel v. Proud* (1961), 189 Kan. 6, 367 P.2d 61. The statement that a prescribed radium treatment on swollen glands in the patient's neck would not leave a permanent scar was found to support a breach of contract action in *Crawford v. Duncan* (1923), 61 Cal. App. 647, 215 P. 573. That a plastic surgical procedure would make a patient a model of harmonious perfection without pain or scarring was found litigable in *Bailey v. Harmon* (1924), 74 Colo. 390, 222 P. 393. The promise that an operation would result in only minor, hairline scarring was found sufficient in *Camposano v. Claiborn* (1963), 2 Conn. Cir. 135, 196 A.2d 129. An agreement to cure a fractured leg by X-ray treatments was found sufficient to proceed in *Seanor v. Browne* (1932), 154 Okla. 222, 7 P.2d 627. Plastic surgery proposed on the plaintiff's nose in *Sullivan v. O'Connor* (1973), 363 Mass. 579, 296 N.E.2d 183, in order to enhance the plaintiff's beauty and improve her appearance was found a sufficient basis for a breach of contract action. In each of the foregoing cases no separate consideration was found necessary in order for the plaintiff to proceed against the physician or surgeon.

In *Gault v. Sideman*, the alleged statement made by the surgeon to his patient that his herniated disk condition could be cured by surgery was held insufficient because the complaint was found to allege the existence of a contract only to use ordinary care during the operation; the alleged promise was found to have been that the operation "could" or "would" cure the plaintiff and was conclusory and " * * * it would also be necessary, under the facts and circumstances of this case, to allege and prove a separate consideration. *Towell v. Gatewood*, 2 Scam (3 Ill) 22-23; *Wilson v. Blair*, 65 Mont 155, 211 P 289, 27 ALR 1235." (42 Ill. App. 2d 96, 106-07.) Both *Towell* and *Wilson* address themselves to the necessity for additional consideration when an alleged warranty is agreed to after the contract has been made. In *Rogala v. Silva*, statements made to a patient, who had five children and could not economically support more, that she would be unable to have any more children and that the operation would be irreversible were found by the court to have been merely admonitions to her with respect to the seriousness and permanence of the sterilization

operation and expressions of opinion as to the probable outcome of the operation. Absent in the case before us also are the legal, moral and philosophical concerns inherent and recognized in *Wilczynski* as bearing upon the outcome of "wrongful birth" cases. Instead, we have here a situation in which plaintiff claims that she was induced by defendant to permit him to implant teeth into her jaw as elective surgery which, she claims, he promised would enable her to eat the same foods as persons having natural teeth are able to eat. Inferable from these allegations is that those assurances took place in the absence of crisis, a sense of immediacy, emergency, or compulsion because of the alleged circumstances of the visit; both parties were in a position to give sufficient deliberation to the bargain that they allegedly sought to and did ultimately make. Further, the promise appears to have been made at a time concurrent with the formation of the contract from all thus far appears, and goes beyond a mere therapeutic reassurance "that everything would be all right" to the extent of advising the plaintiff that she would be able to utilize the implants as she would natural teeth. Of additional importance is the fact that plaintiff seeks only the contract price plus the cost of new dentures rather than damages ordinarily associated with tort claims.

■■ To be distinguished from the facts in the instant case are those in *Carroll v. Grabavoy* (1979), 77 Ill. App. 3d 895, 396 N.E.2d 836. There, one of the plaintiffs alleged the breach of an express warranty by the defendant dentist that he would provide her with dentures which would be "attractive," "pleasing," and which "would fit well." At the trial of the case it appeared that plaintiff failed to permit necessary adjustments to have been made. The appellate court, although following *Gault v. Sideman* and *Rogala v. Silva* in holding that a separate consideration was necessary under the facts and circumstances of that case, stated (77 Ill. App. 3d 895, 900):

> "We are not determining here that a special consideration would indispensably be required in all cases in order to maintain an action based upon a particular warranty. Without deciding whether the absence of a special consideration for a particular warranty would defeat an action of this kind, the presence or absence of a special consideration may be material in determining whether there is any actionable warranty."

The *Grabavoy* court held that the language used there was employed to describe the treatment to be provided by the dentist as a part of his general obligation to treat the patient with the reasonable skill required of his profession. Under the facts of the case before us, the statements made to plaintiff extend significantly beyond the suggestion that the implants would "be attractive, fit well or be pleasing to the plaintiff" and appear to be express promises to effect a specific result. Plaintiff here should be

permitted an opportunity to prove her case, if she can, without the necessity of pleading or proving a separate consideration for the promise. ■■ As in *Guilmet v. Campbell* (1971), 385 Mich 57, 69, 188 N.W.2d 601, 606 we do not hold that every time " * * * a doctor says to his patient * * * 'I recommend an immediate appendectomy. It will fix you up fine. You will be back at work in no time. Do not worry about it * * * ' " that the doctor has contracted to "cure" his patient. Nor do we hold that every course of treatment prescribed by a dentist gives rise to a warranty of satisfactory or contentment. We hold only that some circumstances, particularly those involving elective and noncompulsory treatment, based upon what was said and that situation in which it was said, there may be recognized a contract or warranty and, if so, what the agreement contemplated according to the intentions of the parties. We also adopt the concern expressed by Justice Smith in *Stewart v. Rudner* (1957), 349 Mich. 459, 468, 84 N.W.2d 816, 823: " * * * that certain qualitative differences should be observed, since the doctor's therapeutic reassurance that his patient will be all right, not to worry, must not be converted into a binding promise by the disappointed or the quarrelsome."

For the foregoing reasons, the judgment dismissing count II must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

PERLIN, P. J., and DOWNING, J., concur.