**Guilio I. SCARZELLA, M.D., Appellant,**

v.

**Margaret G. SAXON, et al., Appellees.**

**No. 80–1096.**

District of Columbia Court of Appeals.

Argued July 2, 1981.

Decided Oct. 2, 1981.

Joseph Montedonico, Rockville, Md., for appellant.

Douglas M. Bregman, Bethesda, Md., with whom Jacob A. Stein, Washington, D.C., was on the brief, for appellees.

Before NEWMAN, Chief Judge, and KELLY and FERREN, Associate Judges.

NEWMAN, Chief Judge:

This appeal arises from a breach of warranty action brought by Margaret Saxon for damages resulting from surgery performed by appellant, Dr. Guilio I. Scarzella. Ms. Saxon's husband, Harry Saxon, claimed a loss of consortium. Following a jury verdict for the Saxons, Dr. Scarzella moved for a judgment notwithstanding the verdict. Upon the trial court's denial of that motion, appellant filed this appeal, urging (1) the trial court erred in failing to instruct the jury that the existence of the alleged warranty must be proved by "clear and convincing" evidence and that the warranty itself must be supported by separate consideration,[1] and (2) that a claim for loss of consortium is inappropriate in a breach of warranty action, and thus the trial court erred in denying the motion for judgment notwithstanding the verdict as to that issue. Finding no error, we affirm.[2]

I

In January 1976, Ms. Saxon consulted her gynecologist, Dr. George Ulma, about a urethral-vaginal problem. Dr. Ulma diagnosed her problem as a diverticulum of the urethra—a cyst on the urethra—and referred Ms. Saxon to a urologist, Dr. Guilio I. Scarzella. Dr. Scarzella, who had treated Ms. Saxon in the past, confirmed Dr. Ulma's diagnosis and recommended that the diverticulum be removed by means of a surgical operation known as a diverticulectomy. Ms. Saxon and her husband consented to the operation, and it was performed at Providence Hospital in the District of Columbia on March 3, 1976.

After the operation, Ms. Saxon experienced certain complications that postponed her release from the hospital until March 16, 1976. A fistula or hole had developed in the wall of her urethra at the site of the diverticulectomy. Dr. Scarzella operated on Ms. Saxon again in June 1976, in an effort to close the fistula, but the attempt was largely unsuccessful. A third operation, performed by another doctor in November 1977, resulted in some improvement, but the fistula remains. As a result, Ms. Saxon suffers from an uncontrolled discharge of urine, and the fistula has affected her sexual relationship with her husband.

Ms. Saxon filed suit in February 1979, against Dr. Scarzella for the damage she suffered as a result of the complications from the diverticulectomy. Mr. Saxon joined the suit in a claim for loss of consortium. At trial the Saxons proceeded on only one theory of liability: breach of warranty. The Saxons alleged that they were induced to consent to the diverticulectomy by Dr. Scarzella's "express warranty" that the operation was safe and that there would be no complications. This warranty was

---

1. Appellant does not raise as an issue on appeal evidentiary insufficiency.

2. Appellant also contends that prejudicial testimony was improperly elicited from appellee Ms. Saxon when the trial judge asked the following question:

> The Court: Now, if Dr. Scarzella had told you that a risk of this surgery, one of the risks of this surgery involved your developing a hole between the urethra and the vagina, would you have undergone the surgery?
> The Witness: No sir, I would not.

This court has recently stated:

> It is beyond question that a court may interrogate a witness in the aid of truth and furtherance of justice, and it is not only the right but the duty of the trial judge to participate

directly in the trial, including the propounding of questions when it becomes essential to the development of the facts of the case. To what extent the court will intervene for this purpose is a matter of discretion. [*Khaalis v. United States*, D.C.App., 408 A.2d 313, 355 (1979), *cert. denied*, 444 U.S. 1092, 100 S.Ct. 1059, 62 L.Ed.2d 781 (1980) (quoting *Womack v. United States*, D.C.App., 350 A.2d 381, 382–83 (1976) (citations omitted).]

In the instant case, the trial judge's inquiry was brief, unobtrusive, and direct. Moreover, the record reveals that the substance of appellant's response had been elicited earlier by trial counsel. Under these circumstances, we cannot find that the court abused its discretion in questioning the witness.

alleged to have arisen out of the discussions between Dr. Scarzella and the Saxons in Dr. Scarzella's office prior to the performance of the diverticulectomy.

Ms. Saxon testified that she and her husband initially met with Dr. Scarzella on January 9, 1976, and that at that time he recommended that she undergo surgery. According to her testimony, Dr. Scarzella also stated that "the operation was a simple operation without complications . . . [that] [i]t only requires a short stay in the hospital, perhaps three or four days. . . . that the operation would just temporarily interrupt [her] work [and] temporarily interfere with [her] sex relationship with [her] husband . . . [and] that the operation is a safe one."

Mr. Saxon also testified that he received assurances from Dr. Scarzella as to the safety and nature of the recommended operation. According to Mr. Saxon, "I was concerned because my wife did not want to have an operation. She did not want to take the time off from her job because it was more or less a busy period . . . [Dr. Scarzella] said that it was a simple operation, would be a simple operation, no complications and that the time lost from work would be minimal and that the time that we would not be able to have sexual relations would be very short."

After the initial meeting with Dr. Scarzella, the Saxons returned home to decide whether Ms. Saxon should undergo surgery. Ms. Saxon testified that two weeks later they again consulted with Dr. Scarzella at which time he reiterated many of the statements that he had made at the first meeting. Following the second meeting, the Saxons consented to the operation.

At trial, Dr. Scarzella had no clear recollection of the precise details of the conversations with the Saxons. He testified that they "talked about . . . sexual difficulties [which might arise] after the operation . . . about the length in the hospital after the operation, how much she would be disabled from going to work, the seriousness of the operation . . . [that] it is a very simple operation as compared to removing a kidney or . . . a bladder." He testified, however, that he "never did guarantee the operation to Ms. Saxon or any operation to any of [his] patients at any time in [his] career. . . ." In addition, Ms. Saxon testified that she had signed a hospital consent form prior to her operation that expressly stated that "[n]o guarantee or assurance has been given by anyone as to the results that may be obtained" from the diverticulectomy.

At the conclusion of all the evidence, the trial court instructed the jury that a physician is not ordinarily a guarantor or warrantor of specific medical results, but that under the proper circumstances, the jury might find that a physician had gone further than usual and had contracted with his patient to guarantee such results. In this case, the alleged "guarantee" was that the urethral diverticulectomy would be free of complications. The jury returned a verdict in the amount of $55,000 in Ms. Saxon's favor and a verdict in the amount of $20,-000 in Mr. Saxon's favor.

Appellant contends on appeal that a physician's alleged warranty of successful medical result is enforceable only where its existence is proven by clear and convincing evidence, and where consideration is furnished separate from and in addition to the consideration paid by the patient for the treatment or operation itself. He urges that the trial court erred in failing to instruct properly on these issues. In relevant part, the trial court's instructions were as follows:

mere wounds or statements by the physician or surgeon to quiet a fear or apprehension or an anxiety of a patient do not constitute a warranty. . . . In order to create a claim of warranty . . . the language or statements used or alleged to have been used by the surgeon must be clearly and unmistakeably a positive assurance by the surgeon or physician to produce or to avoid a particular result or results in treating the patient.

## II

■ The most common theory under which a patient seeks recovery against a physician is that of negligence or medical

malpractice. Annot., *Recovery Against Physician on Basis of Breach of Contract to Achieve Particular Result or Cure*, 43 A.L. R.3d 1221, 1225 (1972). In such cases, a patient typically claims injury due to the physician's failure to exercise the degree of care and skill reasonably expected of other medical professionals with similar skills acting under similar circumstances. *See, e. g., Morrison v. MacNamara*, D.C.App., 407 A.2d 555, 560 (1979); *Stottlemire v. Cawood*, 213 F.Supp. 897, 898 (D.D.C.1963). A physician, moreover, ordinarily is not deemed to guarantee a specific medical result or to warrant that he or she will effect a cure. *Id.; Coleman v. Garrison*, 349 A.2d 8, 11 (Del.1975); *Sard v. Hardy*, 281 Md. 432, 451, 379 A.2d 1014, 1026 (1977). *See generally* 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 161 (1981); Annot., 43 A.L.R.3d at 1225. Nevertheless, many jurisdictions have recognized that in certain limited circumstances, a physician and his patient may enter into a contractual arrangement that both extends the physician's ordinary duty of care and holds the physician liable for the result of a particular medical treatment. *See, e. g., Depenbrok v. Kaiser Foundation Health Plan*, 79 Cal.App.3d 167, 171, 144 Cal.Rptr. 724, 726 (1978); *Cirafici v. Goffen*, 85 Ill.App.3d 1102, 1106–07, 41 Ill.Dec. 135, 138–39, 407 N.E.2d 633, 636–37 (1980); *Sard v. Hardy, supra; Sullivan v. O'Connor*, 363 Mass. 579, 296 N.E.2d 183 (1973); *Hawkins v. McGee*, 84 N.H. 114, 146 A. 641 (1929). *See generally* Note, *Express Contracts to Cure: The Nature of Contractual Malpractice*, 50 Ind. L.J. 361 (1975); Comment, *Physicians and Surgeons—Sullivan v. O'Connor: A Liberal View of the Contractual Liability of Physicians and Surgeons*, 54 N.C.L.Rev. 885 (1976); 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 161; Annot., 43 A.L. R.3d 1221, *supra*. In order for such a contract to be enforceable, courts typically have required that the warranty be expressly made by the physician and relied upon by the patient, and that the warranty be supported by consideration. *See generally id.* at 1226.

The District of Columbia has joined those jurisdictions which recognize and enforce warranties made by physicians. In *Johnston v. Rodis*, 102 U.S.App.D.C. 209, 251 F.2d 917 (1958), for example, a psychiatrist allegedly advised his patient "that the treatments [electric shock] as given by him were perfectly safe." *Id.* at 209, 251 F.2d at 918. Upon regaining consciousness, the patient discovered that she had sustained a fractured left arm during one of the therapy sessions. The court held that under such circumstances, the physician could be found to have warranted that the treatment would be safe:

> Doubtless a physician's statement that he would cure a disease could seldom if ever be regarded as a warranty. But that is not this case. The statement attributed to the defendant, that shock treatments are "perfectly safe", contains less of prediction and more of present fact. We think this statement, if the defendant made it and did not qualify it in any way, might properly be found to be a warranty. It follows that summary judgment should not have been granted. [*Id.* at 210, 251 F.2d at 918.]

Similarly, in *Rosenblum v. Cherner*, D.C. App., 219 A.2d 491 (1966), we held that a dentist who assured his patient that the dental work that he agreed to perform would "please her to her personal satisfaction," created a warranty upon which the dentist could be sued.

■ Appellant argues that a patient seeking to enforce a medical warranty may do so only by proving its existence by clear and convincing evidence. As support for this proposition, appellant cites *Sullivan v. O'Connor, supra*, where the court voiced a concern that patients might misconstrue a physician's statements of opinion as firm promises and thus would provide too broad a basis for liability:

> It is not hard to see why the courts should be unenthusiastic or skeptical about the contract theory. Considering the uncertainties of medical science and the variations in the physical and psychological conditions of individual patients,

doctors can seldom in good faith promise specific results. Therefore it is unlikely that physicians of even average integrity will in fact make such promises. Statements of opinion by the physician with some optimistic coloring are a different thing, and may indeed have therapeutic value. But patients may transform such statements into firm promises in their own minds, especially when they have been disappointed in the event, and testify in that sense to sympathetic juries. If actions for breach of promise can be readily maintained, doctors, so it is said, will be frightened into practising "defensive medicine." [363 Mass. at 582, 296 N.E.2d at 186.]

In light of these concerns, the Massachusetts Supreme Judicial Court required "clear proof" that a warranty was actually made. *Id.* The court noted that "[t]he law has taken the middle of the road position of allowing actions based on [an] alleged contract [to effect a cure], but insisting on clear proof." *Id.* Similarly, the Maryland Court of Appeals has ruled that "although a patient may recover for breach of an express, pre-operative warranty to effect a particular result, ... he may do so only upon proving by clear and convincing evidence that the physician did, in fact, make the alleged warranty." *Sard v. Hardy, supra,* 281 Md. at 453, 379 A.2d at 1027.

■ We share the concerns expressed by the Massachusetts and Maryland courts and we believe the instruction given by the trial judge is the proper method to address those concerns. Under those instructions, the jury was required to find that the physician "clearly and unmistakably [gave] a positive assurance [that he would] produce or ... avoid a particular result or results in treating the patient," and that this must be found by a preponderance of the evidence. We find this approach which focuses on the clarity of the promise (warranty) to be

equivalent to the Massachusetts ("clear proof") approach and preferable to that of imposing a higher proof burden. Thus, we hold that this instruction constitutes an accurate statement of the law in the District of Columbia with respect to warranties to produce or avoid a particular medical result. We think that this statement of the law adequately protects physicians from frivolous suits and properly allows recovery where a warranty is actually made.[3]

### III

■ Appellant argues that even if Dr. Scarzella's utterances and statements were sufficient to create a warranty, that warranty nevertheless is unenforceable for want of consideration. Specifically, he contends that a physician's warranty of successful medical result is enforceable only where the patient provides consideration separate from the consideration paid for the operation or treatment itself. In the instant case, the Saxons failed to provide such separate consideration.

■ Some jurisdictions in fact have required proof of separate consideration in cases involving medical warranties. *See, e. g., Dorney v. Harris,* 482 F.Supp. 323, 324 (D.Colo.1980); *Coleman v. Garrison, supra* at 11. Other jurisdictions require proof of separate consideration only where the alleged warranty is made post-operatively or independent from the operation. *See, e. g., Cirafici v. Goffen,* 85 Ill.App.3d at 1106, 407 N.E.2d at 636; *Sard v. Hardy, supra,* 381 Md. at 451, 379 A.2d at 1026. We agree with those jurisdictions which hold that where the alleged warranty is made prior to the surgery or treatment, no proof of separate consideration is required where the warranty was an inducement to consent to the treatment. *See Depenbrok v. Kaiser Foundation Health Plan,* 79 Cal.App.3d at 171, 144 Cal.Rptr. at 726; *Cirafici v. Goffen,*

---

**3.** We note also that an appropriate instruction might point out that in determining whether a warranty was made by a physician "special attention be given to the circumstances of the making of the alleged agreement, particularly the nature, complexity, and urgency of the

treatment, the probability of its resulting in the desired end, the 'atmosphere' in which it was made, and the result allegedly contracted for." Annot., 43 A.L.R.3d at 1227; *see* Comment, *supra,* 54 N.C.L.Rev. at 888–89. *See generally* Note, *supra,* 50 Ind.L.J. at 366–79.

*supra* 85 Ill.App.3d at 1106–07, 41 Ill.Dec. at 138–139, 407 N.E.2d at 636–37; *Sard v. Hardy, supra,* 281 Md. at 451, 379 A.2d at 1026. *See also Sullivan v. O'Connor,* 363 Mass. at 582, 296 N.E.2d at 186; *Guilmet v. Campbell,* 385 Mich. 57, 67 n. 1, 188 N.W.2d 601, 605 n. 1 (1971); *Hawkins v. McGee, supra* 84 N.H. at 117, 146 A. at 643; *see generally* 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 161, at 294; Annot., 43 A.L.R.3d at 1233. Since it is undisputed that appellant's warranty in the instant case was made prior to appellant's decision to have an operation, no additional consideration was necessary. Thus, we find no error in the trial court's instruction on this issue.

## IV

Finally, appellant argues that Mr. Saxon's consortium claim was inappropriate, as a matter of law, in a suit based upon a contractual cause of action. He argues that the trial court therefore erred in denying his motion for judgment notwithstanding the verdict as to that issue.

Generally, claims for loss of consortium are based upon torts committed by third parties that result in the physical injury or incapacity of one's spouse. *See* W. Prosser, Law of Torts § 125 (4th ed.1971). As one court notes, however, "it cannot be overlooked that historically[,] actions on warranties were in tort also, sounding in deceit." *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 413, 161 A.2d 69, 100 (1960). Indeed, Prosser comments that "[u]nlike other elements of a contract, warranty never has lost entirely its original tort character." W. Prosser, *supra,* § 95, at 635 (footnote omitted). Given the tort-like character of warranty, it is therefore not unusual for a consortium claim to be based upon a breach of warranty, where that breach has resulted in physical injury to the spouse.

In *Henningsen v. Bloomfield Motors, Inc., supra,* for example, the husband's derivative claim for loss of consortium was allowed, even though the claim was based upon a breach of warranty. There the husband, while accompanied by his wife, pur-

chased a car from the defendant dealer. The record indicated that the husband intended the car as a gift to his wife. Although the wife was not a party to the contract, she nevertheless was permitted to recover for breach of warranty as the contract of sale contained an express warranty against defective workmanship. With respect to the husband's consortium claim, the defendant there argued that that claim could not lie where the wife's recovery for personal injuries was based on warranty. The court rejected this argument on the ground that "[i]t would be illogical to accept the right of a wife to recover in contract for breach of warranty and to hold that the husband's derivative claim was not within the contemplation of the parties when the agreement of sale was made." 32 N.J. at 417, 161 A.2d at 102. Similarly, in *Pizzingrilli v. F. Fred Von Kessel, M.D., P.C.,* 100 Misc.2d 1062, 420 N.Y.S.2d 540 (Sup.Ct.1979), the court held that the husband's action for loss of consortium sufficiently stated a claim upon which relief might be granted where the claim was based in part on the physician's alleged breach of contract to effect a medical cure.

In the instant case, there was uncontroverted evidence that Mr. Saxon appeared with Ms. Saxon at appellant's office and that they jointly inquired as to the nature of the proposed surgery. The Saxons testified that appellant assured *both* of them that the operation was safe and that it would interfere with their sexual relationship only temporarily. Accordingly, we cannot conclude that the trial court erred in denying appellant's motion for judgment notwithstanding the verdict as to the consortium issue.

*Affirmed.*