[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT BLUE CROSS AND BLUE SHIELD'SMOTION TO STRIKE
This case arises out of the alleged malpractice of a doctor who had been the primary care physician of the plaintiff's decedent. The decedent was a member of a Blue Cross and Blue Shield's health maintenance organization (HMO) and the doctor had been the treating physician in the HMO. As a result of the care and treatment by the doctor, the plaintiff brought this action against the HMO in negligence and breach of contract. The defendant HMO has moved to strike the Ninth Count which sets forth a claim of loss of parental consortium on behalf of the children of the decedent and the Tenth, Eleventh and Twelfth Counts which are claims of breach of contract by the defendant HMO. Additionally, the defendant moves to strike the Eleventh and Twelfth Counts of the revised complaint which are claims for loss of parental consortium as a result of the alleged breach of contract, but the Eleventh Count does not appear to be a loss of parental consortium claim.
The standards to be applied in deciding a motion to strike are clear. The nonmoving party's complaint must be given that interpretation which is most favorable in light of the attack made upon it. Amodio v. Cunningham, 182 Conn. 80, 82 (1980). It is also true as the plaintiff points out that the separate paragraphs of a complaint
 are only convenient subdivisions of that larger and more comprehensive statement, which the rules of good pleading require to embody the essential allegations of fact which lead to a legal conclusion sufficient for the purpose of the pleader. . . . In this sense a portion of a pleading is not insufficient if, taken in connection with the facts with which it is pleaded, tends to the making of a sufficient statement taken in its entirety.
Hill v. Fair Haven Westville RR Co., 75 Conn. 177, 180 (1902). CT Page 5737
This is an old fashioned way of saying that you look to all the facts alleged in the complaint to see if they support the legal theory alleged, when the claim is made that the assertion of a particular legal theory is insufficient.
1.
This court believes that actions for loss of filial and/or parental consortium should be allowed in our state. Scalese etal v. Bristol Hospital, et al., 14 Conn. L. Rptr. 534 (1995). But pursuant to the reasoning in Falconieri v. Choquette,17 CONN. L. RPTR. 658, 2 Conn. Ops. 1150 (1996), this court feels constrained to hold that a cause of action for loss of parental consortium is not recognized in a wrongful death action. Therefore, the Ninth and Twelfth Counts are stricken.
2.
The defendant HMO as indicated has also moved to strike the Tenth and Eleventh Counts which are claims of breach of contract. The defendant argues that our state does not recognize a cause of action based on a health care provider's breach of contract unless the doctor has promised a particular result or cure to the patient. The defendant claims the facts set forth in the complaint are thus legally insufficient to support such a claim.
The plaintiff's breach of contract claim is based on the following allegations in the revised complaint:
 6. As an HMO, Constitution and Healthcare provided a managed health care system through which, for a fixed fee, they assumed the responsibility of providing health services to its contractual members, including Salvatore Natale.
 7. Constitution and Healthcare provided health services to its members through agreements and contracts with specified physicians ['participating physician'], and other specified health care providers.
 8. As an HMO, Constitution and Healthcare were required to provide an ongoing quality assurance program for its health services and to insure that CT Page 5738 its members were provided with quality care by its participating physicians.
 9. Pursuant to the agreement between the HMO and its members, members were required by the HMO to select a participating physician to act as the member's `Primary Care Physician.'
 10. Constitution and Healthcare represented that a member's Primary Care Physician would manage all aspects of the member's health, become familiar with the member's overall health needs, maintain the member's medical records, serve as the member's personal health advisor, coordinate all health care received by the member, arrange for special testing, and refer the member to specialists.
 11. In order to induce eligible persons to become members of the HMO, and to assure existing members of the quality of care provided by the HMO, Constitution and Healthcare represented and guaranteed that each of its participating physicians had been approved by Constitution and Healthcare and would provide quality care to HMO members.
 12. Defendant Meia was a participating physician of the Healthcare and Constitution HMO, and had contracted and agreed with Healthcare and Constitution to provide health care to the members of the HMO.
 13. Healthcare and Constitution represented Meia to be qualified as approved as both a primary care physician and as a specialist in cardiology and cardiovascular disease."
The following two paragraphs set forth particular ailments and heart problems of the deceased which he had shared with family members. Paragraph 16 then alleges:
 16. Because of his family history and based upon the representations made by Defendants Meia, Constitution and Healthcare regarding the CT Page 5739 qualifications of Meia and the nature and quality of care to be provided by the HMO, Salvatore Natale became a member of the HMO and chose Defendant Meia as his primary care physician."
A series of paragraphs then alleges Dr. Meia for several years never conducted or recommended annual exams or performed tests to determine if the deceased suffered from heart disease. Mr. Natale died from occlusive heart disease and the complaint alleges it could have been diagnosed by a variety of procedures and if so discovered could have been treated. Paragraph 26 then makes a series of allegations sounding in negligence against the defendant HMO — failure to monitor Natale's condition and diagnose it, failure to obtain an adequate history, failure to inform Natale of risks of his condition or refer him to a specialist and failure to oversee the health service provided to Natale.
Paragraph 27 then alleges Mr. Natale's death was caused by the defendant HMO's breach of contracts and agreements with Mr. Natale "and its representations to him by which the defendant [HMO] was to provide quality health care and oversee his health needs."
This motion to strike raises an issue often discussed by trial courts. The question is to what extent and under what circumstances can a malpractice action be brought together with an action for breach of contract. In Barnes v. Schlein,192 Conn. 732 (1984), an action was brought in malpractice and breach of contract. The court decided that § 52-584 was the appropriate statute of limitations to apply, not the six year statute of limitations "concerning implied contracts". Id., page 734. The court went on to say: "A fair reading of the complaint reveals that the gravamen of the suit was the alleged failure by the defendant to exercise the requisite standard of care. Her complaint is absolutely barren of any allegation that the defendant breached any contractual agreement made with her."Id., pp. 735-36.
Several superior court cases can be read to have held that medical malpractice cannot give rise to a breach of an implied contract claim where the implied contract is based on an alleged understanding (1) that the medical procedure or treatment would be performed with the standard of care expected of someone in the healthcare profession; or (2) that the health care professional CT Page 5740 had skills commensurate with people in his or her profession.Polesak v. Medical Laboratory Services, 20 CONN. L. RPTR. 97, 19017 WL 422532; Picarazzi v. Fichera, 13 CONN. L. RPTR. 96,1994 WL 702802; Huffmire v. Cohen, 1996 WL 737502. A second line of cases disagrees with that position. Camposano v.Claiborn, 2 Conn. Cir. Ct. 135, 137 (1963); Paggioli v.Manchester Memorial Hospital, 1 Conn. L. Rptr. 729 (1990); cf.Hickey v. Slattery, 103 Conn. 716, 719 (1926) which appears at odds with Barnes v. Schlein; supra; the Hickey court noted that "two distinct causes of action may arise out of one delict."Id., pp. 719-720, in Hickey there was a malpractice claim and a claim for breach of an "implied obligation." Id., p. 719.
The position expressed in the first line of cases just referred to appears to be supported in most jurisdictions.
 It is generally held that a doctor is not liable in contract for breach of an implied promise to possess "skill commensurate to that possessed by his [sic] colleagues, in similar localities." For a breach of such an implied promise or failure to live up to that standard it has generally been held that the patient is limited to a malpractice (negligence) action.
Law of Contracts, Calamari Perillo, 3d. edition (1985), § 2-6, page 33.
For the purposes of the issue now before the court it is necessary to understand the analytical basis of this position. The implied contract action sought to be used in these malpractice cases is quasi-contractual in nature, it is in fact a "contract implied in law" but this is "not a contract at all but an obligation imposed by law to do justice even though it is clear that no promise was ever made or intended." Calamari Perillo, supra at § 1-12, page 19. But in the malpractice context, it makes no sense in these circumstances to permit an implied contract action since the standards that would be turned to in order to impose an obligation by law to do justice is the very negligence standard already permitted under the malpractice theory. Thus, in this type of case, not only is the "delict" the same, i.e., the facts that give rise to any cause of action, but there appears to be one cause of action and a party should not be permitted to use two different labels to define the same thing. Or to put it another way, there is no reason to create an implied contract remedy even though no promise was made in order that justice may be done because justice can be done through a CT Page 5741 malpractice claim.
However, despite all these observations, what the plaintiff argues is that she is not relying on an implied contract in law theory but an express contract theory or a contract implied in fact not law. The plaintiff in its revised complaint states in effect that the defendant HMO made an offer to the deceased. "Representations" were made to him as set forth in the revised complaint which, in effect, were promises by the defendant HMO. A promise has been defined as "a manifestation of intent to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement, Second, Contracts, § 2; cf. Day v. AmaxInc., 701 F.2d 1258 (CA. 8, 1983).
Giving it every favorable inference, the revised complaint can be read to set forth an agreement — certain explicit representations were made by the HMO and the agreement can be said to have been manifested by conduct since the deceased, in response to the representations, is alleged to have joined the HMO — there are elements of express contract and a contract implied in fact. As Calamari Perillo point out, both of these types of contract are "true contracts formed by a mutual manifestation of assent," and they bear no relationship to contracts implied in law, just discussed, which are not based on mutual manifestation of assent, id. at § 1-12, page 19, but are imposed on parties out of the court's sense as to what is justice. Thus, the plaintiff argues that this contract claim is based on an express and/or implied contract in fact theory which can be appropriately combined with the malpractice claim.
This position is persuasive in terms of the ordinary application of contract law but the language in some of the caes and commentaries presents some difficulty and might be taken to suggest that the ordinary rules of contract law might not apply in this area.
On the one hand, it is said that in the area of malpractice a negligence tort claim of course can be made. Then, as noted, it is stated that an action on a theory of implied contract cannot be brought. This is immediately followed in some cases by the general observation that despite the bar on an implied contract claim, it is still true that a physician is free to enter into an express contract but the types of express contractare defined in narrow terms. Thus, a doctor or health care CT Page 5742 provider can be held liable for breach of a promise to cure.Hawkins v. McGee, 146 A. 641 (N.H., 1929); Scarzella v. Saxon,436 A.2d 358 (C.A., Dist. of Col., 1981); cf. Giambozi v. Peters,127 Conn. 380, 386-387 (1940), to obtain a specific result, Stittv. Gold, 225 N.Y.S.2d 536 (1962); Sullivan v. O'Connor,296 N.E.2d 183 (Mass., 1973); Murray v. University of PennsylvaniaHospital, 490 A.2d 839 (Pa., 1985); cf. Camposano v. Claiborn, 2 Conn. Cir. 135 (1963), or to administer a prescribed treatment,Stewart v. Rudner, 84 N.W.2d 816 (Mich., 1957); Brook v.Robinson, 163 So.2d 481 (La., 1964); cf. Robinson v. Firestone,127 N.E.2d 330 (N.Y., 1955). See generally, Calamari Perillo,supra at § 2-6, page 33 and Note: Express Contracts to Cure: TheNature of Contractual Malpractice, 50 Ind.L.J. 361.
But the just discussed truism — that doctors or health care providers cannot be sued on an implied contract in law but may make and be sued for breach of an express contract to obtain a cure, achieve a specific result or provide a particular treatment — all of this says nothing on the analytically distinct issue of whether granting the foregoing, a health care provider can also enter into an express contract to provide adequate and qualified medical care in accordance with the generally accepted standards of the community and be sued for a breach thereof. Why not? No principle of contract formation would seem to prevent it. What if a patient came to a doctor or HMO office and there was placed in front of the patient a written contract making all the general representations and promises just referred to and of the type alleged in the revised complaint, the patient signs the contract and then receives inadequate treatment violative of the representations made in the written contract? Can it be appropriately said there can be no action on such a written express contract? And if, as here, the representations or promises indicative of a contractual offer are made orally and accepted by acceptance of treatment, why would that not be a contract implied in fact which in the law is treated exactly like an express contract and is not a contract implied in law? The court is not aware of nor has it been brought to its attention any special or particular reason why the general law as it applies to express contracts and contracts implied in fact should be changed in the malpractice area at least on the basis of the record presented by a motion to strike.[1]
This is not to say that the court concludes that the plaintiff can support an express contract or an implied in fact contract at trial or at a future summary judgment review. When CT Page 5743 explored by discovery, the allegations of "representations" in the revised complaint made to support the contract claim may be shown to be too vague to qualify as "promises" or "offers" for contract formation purposes and be little more than "therapeutic reassurance" not warranting the finding of a true contract. Cf. 43 A.L.R.3d 1221, 1244, § 6(b), "Contract to Effect Specific Medical Treatment." But this is a motion to strike and the court is obliged to give the revised complaint the benefit of the most favorable inferences. Therefore, the motion to strike the breach of contract claim in the Tenth and Eleventh Counts is denied. As indicated previously, the Ninth and Twelfth Counts are stricken.
Corradino, J.