CHARLES J. BARNES, Appellee, vs. THE AMERICAN BRAKE-BEAM COMPANY et al. Appellants.

*Opinion filed February 19, 1909.*

1. APPEALS AND ERRORS—*when first decree in accounting is not. appealable.* A decree in accounting for royalties which fixes the complainant's rights as to some of the defendants but reserves for further consideration, until the coming in of the master's report upon the accounting, the question of the liability of one of the defendants and all questions of costs, is merely interlocutory, and may be reviewed on appeal from the final decree dismissing the bill as to the one defendant whose rights had not been determined and also as to one defendant against whom the first decree ran.

2. SAME—*when objection that a bill is multifarious will not be considered.* Where an objection that a bill in equity is multifarious is not raised by demurrer, the court may, in its discretion, allow or disallow the objection where it is raised by answer, and if the court refuses to allow the objection on the hearing it will not be considered on appeal.

3. EQUITY—*when a court of equity may take jurisdiction and grant relief.* A court of equity may take jurisdiction and grant relief by requiring an accounting to the complainant for royalties on a patented article manufactured by the defendants, where the claim of the complainant is that the defendants acquired the patent with full notice of complainant's right to royalty upon each article manufactured under the patent, and not that the transfer of the patent was a breach of the contract for royalties.

4. SALES—*what provision of contract is sufficient to put purchaser on inquiry.* A provision in the contract for the purchase of a brake-beam manufacturing business and the patent, to the effect that the purchaser will hold the seller harmless against all demands for royalties on brake-beams subsequent to a certain date, is sufficient to put the purchaser upon inquiry as to what claims or demands there might be for royalties on the brake-beams.

5. SAME—*liability for royalties where a patent is transferred.* Where a manufacturing company owning a patent and having a contract with a party to pay royalties on each article manufactured, sold and collected for during the life of the patent, sells its business and patent to another company which has full notice of such party's rights, if the latter affirms the transfer he may compel the purchaser to account for royalties upon articles manufactured by it under the patent.

6. CONTRACTS—*law will not imply agreements having no foundation in necessity.* While a written contract includes not only what the parties say but also all those things which the law implies as a part of it, yet the law does not imply agreements having no foundation in necessity and which it cannot be supposed that persons of ordinary prudence would have included in the contract.

7. CORPORATIONS—*when liability as a guarantor is extinguished by consolidation.* Consolidation of two corporations will furnish ground for holding the corporation which retains its identity liable for the obligations of the corporation whose identity is destroyed, but the loss of identity of the latter corporation will extinguish any liability it may have had as guarantor for the corporation into which it is merged. (*Chicago, Santa Fe and California Railway Co.* v. *Ashling,* 160 Ill. 373, explained.)

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

JOHN P. AHRENS, and JESSE A. BALDWIN, for the appellant the Chicago Railway Equipment Company.

DEFREES, BUCKINGHAM, RITTER & CAMPBELL, and RANDOLPH LAUGHLIN, for the appellant the American Brake-Beam Company.

BUELL & ABBEY, and EVERETT L. MILLARD, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The Branch Appellate Court for the First District affirmed a decree of the superior court of Cook county adjudging the sum of $18,388.50 to the appellee, Charles J. Barnes, and ordering the appellant the Chicago Railway Equipment Company to pay the same with a certain part of the costs, and in case of failure of said company to pay said sum and costs within ninety days after the entering of

the decree or after the final determination of an appeal, ordering execution for said sum and costs against the appellant the American Brake-Beam Company and taxing a part of the costs against the latter company. From that judgment appellants prosecuted separate appeals to this court.

David L. Barnes invented an improved brake-beam, called the Kewanee brake-beam, and on January 22, 1891, applied for letters patent for his invention. On the same day he assigned the invention and all his rights to Elizabeth H. Frost, wife of the secretary of the Northwestern Equipment Company, and requested that the patent be issued to her. The assignment was in pursuance of an agreement that the Northwestern company would give to Barnes for his invention $10,000 of its stock and ten cents on each beam manufactured and sold by it. The patent was granted and letters patent were issued to Mrs. Frost on April 21, 1891, and she assigned the same on June 13, 1891, to the Northwestern company. The complainant was a brother of David L. Barnes and dependent upon him; and David L. Barnes, for the purpose of aiding the complainant, made a gift to him of the right to receive ten cents on each beam made and sold by the Northwestern company. The Northwestern company then entered into a contract on January 12, 1892, with the complainant, by which the Northwestern company, as party of the first part, for an expressed consideration of one dollar, agreed to pay to the complainant "for all beams sold by said party of the first part the sum of ten cents per beam." Afterward defendant the American Brake-Beam Company acquired the property of the Northwestern company, including the patent, which was transferred on October 31, 1892, and this transfer was with notice of the contract and of complainant's right to receive ten cents on each beam sold under the patent. The beam was manufactured in the name of the Northwestern company until the spring of 1894 and the sums due the complainant were regularly paid, but the account was carried

on books kept in the name of the Beam company. In June, 1894, the Beam company began to manufacture and sell the brake-beams and continued to pay the complainant his ten cents on each beam up to the fall of 1896, when Henry D. Laughlin, the president of the Beam company, raised a question as to whether that company was bound by the contract of the complainant with its predecessor in title, and whether the complainant's claim applied to the beam as then made, which had some improvements. The differences were compromised and settled by a contract between the complainant and the Beam company, which recited that it was entered into on September 15, 1896, but at the conclusion appeared to have been executed on November 9, 1896. It stated the matters of difference and the compromise of them, and reduced the complainant's claim for royalties from ten cents per beam to six cents, and the Beam company agreed to pay six cents on all "brake-beams manufactured and sold and collected for by it" during the term covered by the letters patent, "such royalties to be due and payable quarterly, on the tenth days of January, April, July and October in each year." This contract was under seal, based upon a settlement and compromise between the parties, and superseded the previous contract. In 1898 the Beam company organized a corporation under the name of Kewanee Manufacturing Company, as an eastern branch of the Beam company's business, and from the date of the contract the Beam company paid to the complainant royalties at six cents per beam on each beam manufactured, sold and collected for by it or by the Kewanee company. In the summer of 1899 the defendant the Chicago Railway Equipment Company purchased the plant, brake-beam business and patents of the Beam company. The contract was dated August 1, 1899, and provided that the transfer was to be treated as of June 10, 1899, but the resolutions were not passed until September 19, 1899, and the contract was actually executed the last of October or first of November, 1899. The consider-

ation was $75,000 in cash and $175,000 in the capital stock of the Equipment company. Laughlin owned fifteen-seventeenths of the capital stock of the Beam company, and was to transfer to trustees, for the Equipment company, at least twelve thousand shares, in order to secure to the Equipment company control of the Beam company. The contract contained an agreement that the Equipment company would hold the Beam company harmless against all claims or demands for royalties, by whomsoever asserted, payable on brake-beams manufactured or sold by the Equipment company, or for its account, subsequent to June 10, 1899. This stipulation related primarily to beams manufactured by the Beam company after June 10, 1899, for the account of the Equipment company before the transaction was closed up. The purchase and transfer were made with full notice of the equities and rights of the complainant. The Equipment company manufactured and sold beams, the royalty for which amounted to $18,388.50, the amount of the decree.

The original bill was filed against the Beam company and Equipment company and Henry D. Laughlin and sought an accounting under the contract. Afterward the Kewanee Manufacturing Company was made a defendant, and the original bill, with the amendments, was embodied in what counsel call an engrossed bill. This bill charged fraud on the part of the Beam company in the sale and transfer to the Equipment company, and charged the Equipment company with fraud in acquiring the patent for the sole purpose of preventing the manufacture of brake-beams under it in competition with brake-beams manufactured by the Equipment company. The court referred the cause to a master, and upon the report of the master found and decreed that the Beam company was bound to pay at the rate specified on all beams manufactured either by the Kewanee company, the Equipment company or itself; that the Equipment company was bound to account for and pay royalties on all brake-beams manufactured for its account and sold

and collected for by any of the three companies, as well as upon brake-beams manufactured, sold and collected for by it, and that the three companies account to the complainant for beams manufactured, sold and collected for, according to their respective obligations. The cause was again referred to the master to take and state the accounts with the several defendants. The master stated the accounts, and in the final decree the court dismissed the bill as to the Kewanee Manufacturing Company and Henry D. Laughlin but held the other defendants liable for all the royalties due.

It is contended that the first decree was final and settled the rights of the parties and cannot now be reviewed on an appeal from the final decree. A decree which finally settles the controversy and adjusts the rights of the respective parties is final and appealable although questions of account remain to be adjusted. The first decree in this case does not fulfill the required condition, for the reason that the court therein ordered that the further consideration of the cause, including the disposition of the case as to Henry D. Laughlin and all questions of costs, should be, and was, continued until the coming in of the master's report upon the accounting. This provision left open the question whether any relief should be granted to the complainant against Laughlin and reserved to the court the power to further consider and determine the rights of the parties, and in the final decree the court, under that reservation, dismissed the bill as to the Kewanee Manufacturing Company, against which the original decree ran, and also as to Henry D. Laughlin, whose rights or liabilities were not settled by the first decree. In view of the unusual provision of the first decree it must be held to be interlocutory and not final.

It is argued that the court erred in not dismissing the bill on the ground that it was multifarious. The objection was raised by demurrers, but the demurrers being overruled the defendants did not stand by them but answered to the merits. The answers operated as waivers of any objection

on that ground. (*Risser* v. *Patton,* 232 Ill. 353.) The court may of its own election allow the objection where raised by the answer, but the defendant cannot insist upon it, and the court may consider and allow the objection or not, as it chooses. (*Labadie* v. *Hewitt,* 85 Ill. 341.) The superior court having exercised the discretion confided to it by refusing to allow the objection on the hearing, it will not be considered now.

Another objection to the relief granted is that the complainant had a complete and adequate remedy at law, and this objection was reserved, as it may be, by the answers. If the action had been for a breach of the contract between the complainant and the Beam company an action at law would have afforded an adequate remedy, but the complainant did not choose to treat the transfer of the patent as a breach of any obligation to him, but chose to affirm the transfer and hold the Equipment company, as well as the Beam company, for the royalty. He never owned the patent but the invention belonged to his brother, and the payment of ten cents on each beam during the life of the patent was a part of the purchase price of the invention. The contract with the Northwestern company did not truly state the facts or the relation of the parties, but recited that the company was the owner of the patent and the complainant desired to acquire an interest in the business, and the promise was in consideration of one dollar paid by him. His claim against the defendants was that they took the patent with actual notice of his interest and the nature of it. The right asserted against the Equipment company was on the ground that it received its title and interest in the patent subject to equities of which it had notice, and that its rights became subject to the equities of the complainant to the same extent as though the title of the patent had remained in the Beam company. We regard it as proper for a court of equity, which looks through the forms of things

and discovers the substance, to assume jurisdiction and grant relief.

The Equipment company bought the business of the Beam company, and the patent, with notice of the rights and equities of the complainant. The finding of the master was based upon evidence of actual notice to the officers and committee of the Equipment company, and, although contradicted to some extent, it supports the conclusion of the master. Aside from that evidence the agreement of the Equipment company to hold the Beam company harmless against all claims or demands for royalties on brake-beams subsequent to June 10, 1899, was sufficient to put the Equipment company upon inquiry as to what claims or demands there might be for royalties on the beams. The Beam company manufactured and sold beams for the account of the Equipment company from June 10, 1899, to January, 1900, and on January 11, 1900, assigned and transferred the letters patent to the Equipment company. The agreement probably was designed to compel payment by the Equipment company of the royalties during that period, but it was ample notice that there were claims or demands for royalties on the brake-beams, and any inquiry would have led to full knowledge how the title to the patent was acquired by the Northwestern company, the nature of complainant's rights and the agreement with the Beam company. We are satisfied that the decree against the Equipment company is just, and the judgment of the Appellate Court is affirmed so far as that company is concerned.

We have not been able, however, to find any ground upon which the judgment of the Appellate Court can be sustained as against the Beam company. On the accounting before the master he found that there was due from the Beam company to complainant $1304.16 for beams manufactured, sold and collected for by it, and the Beam company thereupon paid over to the solicitors for complainant that

sum and satisfied all that was due from the Beam company, unless it was liable for royalties on beams manufactured by the Equipment company, which it neither manufactured nor sold nor collected for. The argument in support of the decree as against the Beam company proceeds upon two grounds: First, that the sale and transfer to the Equipment company were in reality a consolidation of the Beam company and the Equipment company; and second, that there was an implied agreement on the part of the Beam company to carry on the business of manufacturing and selling Kewanee brake-beams during the entire life of the patent, provided it could be done at a reasonable profit, and therefore that party became answerable for all royalties on beams manufactured by any company to whom it should sell the patent. The positions are wholly inconsistent, since the loss of identity of the Beam company by consolidation with the Equipment company would extinguish liability as a guarantor for the Equipment company, with which it was merged. If there had been a consolidation it would have furnished ground for holding the Equipment company liable for obligations of the Beam company, because the existence of the two corporations had been merged in that one. There was no consolidation, in fact, and the opinion of the Appellate Court was that the transaction was not strictly a consolidation. It is not clear from the opinion of the Appellate Court upon what ground the Beam company was held liable for royalties on beams which it neither manufactured, sold nor collected for and which were not within the terms of its contract. The decision in *Chicago, Santa Fe and California Railway Co.* v. *Ashling*, 160 Ill. 373, is not applicable to the facts of this case and does not tend to sustain the decree. In that case the Santa Fe company assumed the payment of the bonded indebtedness of the St. Louis company and issued its stock dollar for dollar in exchange for stock of the St. Louis company, leaving that company without property, corporate rights or franchises

of any kind and without stockholders. There was not even the skeleton of a corporation left and one company was merged and incorporated in the other. But, as said before, the Beam company could not be held liable on the ground that it had lost its identity and ceased to have any existence separate or apart from the Equipment company.

On the question whether the Beam company became a guarantor for the Equipment company by virtue of an implied obligation to carry on the business during the life of the patent, provided it could be done at a reasonable profit, there are the fatal objections that the bill does not proceed upon such a ground, and if there had been an averment that the business could be done at a reasonable profit there was no evidence to sustain it. There was no evidence on the subject, but the complainant relied on the fact that a certain number of brake-beams had been manufactured and sold and collected for. The law supplies the want of express agreements by necessary implications, and a contract includes not only what the parties say in it, but all those things which the law implies as a part of it. The law, however, will not make a contract for parties which they have not made themselves, or imply agreements which have no foundation in necessity and which it cannot be supposed that persons of ordinary prudence would have included in the contract. It was held in *Wilson* v. *Marlow,* 66 Ill. 385, where an interest in a patent was sold in consideration of five per cent on the net profits arising from the invention until it should amount to $5000, that a fair and reasonable interpretation of the contract led to the conclusion that the purchasers should prosecute the business until that sum was paid, if it could be made so profitable as to justify its prosecution. An instruction, however, that the verdict should be for the plaintiff if the defendants could have carried on the business at any profit was held to be erroneous. It was, of course, understood in that case that the party who sold the patent was to have the purchase price if the business was

successful so as to justify its prosecution, and, of course, it was contemplated in this case that beams would be manufactured under the patent. There was no agreement to manufacture any stated number of beams, and nothing from which the law could imply a contract to retain the title to the patent as against the natural right to dispose of it without interfering with any right of the complainant. If the Beam company could be made liable for a fraudulent sale of the patent without notice or to an insolvent party unable to respond to the complainant's claims, no case of that character was presented. The complainant saw fit, as he had a right to do, to affirm the sale and transfer of the patent and to recover from the Equipment company the royalties due to him. (*Havana Press Drill Co.* v. *Ashurst,* 148 Ill. 115.) If there had been a fraudulent transfer the remedy against the Beam company would have been by an action at law, and if there had been a failure to manufacture beams or a breach of any implied agreement to manufacture them if it could be done at a profit, the remedy would have been by an action at law. In either case the law would have furnished a complete and adequate remedy.

The judgment of the Appellate Court is affirmed so far as it affirms the decree against the Chicago Railway Equipment Company. The decree of the superior court and the judgment of the Appellate Court against the American Brake-Beam Company are reversed and the cause is remanded to the superior court. The appellee will pay the costs of the American Brake-Beam Company in this court, and the appellant the Chicago Railway Equipment Company will pay the remainder of the costs.

*Affirmed in part, reversed in part, and remanded.*