Charles A. BANE, Plaintiff,

v.

Richard G. FERGUSON; Michael I. Miller; Frederick R. Carson; Sharon L. King; Davis J. Rosso; and Robert A. Yolles, Defendants.

No. 88 C 6689.

United States District Court,
N.D. Illinois, E.D.

Feb. 27, 1989.

George N. Leighton, Earl L. Neal & Associates, Chicago, Ill., Susan B. Magary, Wayzata, Minn., for plaintiff.

Miriam F. Miquelon, Miquelon & Associates, Ltd., Michael A. Pope, Mark D. Blumberg, Phelan, Pope & John, Harvey M. Silets, Locke E. Bowman, III, Silets & Martin, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Charles Bane is a former partner of the former Chicago law firm of Isham Lincoln & Beale. He retired as a partner from Isham on December 31, 1985, at which time he became eligible for benefits under the firm's Retirement Plan. Isham adopted this plan on August 6, 1985, as an amendment to the firm's Partnership Agreement, and Bane voted in favor of its adoption. The Plan provided that Isham would pay benefits to qualified retired partners until, among other events, the first day of the month of the termination of the Plan. Only two provisions in the Plan spelled out when such termination could or would occur: in Section 8.1, the Plan stated, "If the Firm shall dissolve and there be no successor to it, this Plan will terminate." In Section 8.4, the Plan allowed that

> Notwithstanding the second sentence of Section 8.2 of this Plan, this Plan may be terminated ... as to any retired Partner or his or her Surviving Spouse if federal or state law requires funding of any of the benefits of the Plan for that person or imposes other similarly substantial burdens on continuation of the Plan as to that person.

Bane contends that Isham promised more than benefits, however, when it adopted the Plan. He submits that in exchange for his promises to retire at age 72, not to practice law in competition with Isham during retirement, and to refrain from any activity "which damages the reputation of the Firm or which adversely affects the professional activities of the Firm," Complaint, App. A, § 6.1 (hereafter "Plan"), Isham impliedly promised that it would conduct itself "in such a manner that pension payments to a retired partner would continue in accordance with the express undertakings in the Retirement Plan." Complaint at ¶ 8. Bane contends that shortly after his retirement some of his former colleagues and partners at the firm broke

this promise, which ultimately led to the dissolution of Isham and the end of its payments to Bane on April 30, 1988.

Bane has sued these former colleagues—Richard G. Ferguson, Michael I. Miller, Frederick R. Carson, Sharon L. King, Davis J. Rosso, and Robert A. Yolles—to get his benefits resumed. Bane alleges that these persons were members of Isham's Managing Council at the time Isham adopted the Retirement Plan. He submits that through various acts and omissions they brought Isham to ruin. Among these acts and omissions are the following, set forth in *id.* at ¶ 9:

(a) Management of Isham's affairs so as "to cause a number of highly regarded partners of [Isham] to leave, taking important clients and legal business with them, and adversely affecting [Isham's] financial health."

(b) Arranging for a merger with the Chicago firm of Reuben & Proctor in June 1986, without investigating whether the firms would be "successful" after the merger. Bane contends that this failure to investigate resulted in the merger being a disaster.

(c) Willful refusals "to attempt to work out and resolve the issues resulting from the merger" once it appeared that it had soured. Instead, Bane accuses the defendants of "maliciously and wrongfully" abandoning Isham for other competing firms.

(d) Ferguson's abdication of responsibilities in mid-1987, and his self-interested demand on Isham for a $750,000–$1 million payment as a condition of retirement.

(e) Carson's failure "to assist in resolving the difficulties of the Firm...."

Bane's complaint alleges four counts. He submits first that the defendants violated their obligations to him under the Illinois Uniform Partnership Act, Ill.Rev.Stat. ch. 106½, ¶¶ 9(3)(c),[1] 13–15 (Smith–Hurd Ann.1987). Count 2 alleges a breach of the Retirement Plan. As that Plan is express-

---

[1]. The complaint alleges a violation of § 9(c) of the Act, but there is no such provision. The only part of § 9 that contains a subsection (c) is subsection (3) of § 9, so for purposes of this motion this court will construe Bane's references to § 9(c) as § 9(3)(c).

ly subject to Illinois law, Illinois law will cover this count. Count 3 alleges a breach of fiduciary duties under the Illinois Uniform Fiduciaries Act, Ill.Rev.Stat. ch. 17, ¶¶ 2001 et seq. (Smith–Hurd Ann.1981), and Count 4 alleges gross negligence. For these acts Bane seeks an amount equal to what he would be entitled to receive under the Plan, plus punitive damages.

The defendants have moved to dismiss Bane's complaint under Rule 12(b)6, Fed.R. Civ.P.[2] This court must take the allegations of Bane's complaint as true for purposes of this motion, as well as draw reasonable inferences from those allegations so as to put the complaint in the light most favorable to Mr. Bane. See *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985) (setting forth standards for construing complaints for purposes of motions under Rule 12(b)(6)).

*Partnership Act Claims*

In Count 1 of his complaint, Bane alleges violations of the Illinois Uniform Partnership Act, Ill.Rev.Stat. ch. 106½, ¶¶ 9(3)(c), 13–15. Paragraph 9(3)(c) states that:

> Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to do any other act [see subparagraphs (a) and (b) ] which would make it impossible to carry on the ordinary business of the partnership.

Unlike ¶¶ 13–15, which make the partnership or the partners liable for various acts, ¶ 9(3)(c) does not expressly create liability for anyone. In fact, it tends to limit liability, by denying fewer than all of the partners the power to bind the partnership. See *id.* at ¶ 9(2) (act of partner "not apparently for the carrying on" of partnership business "in the usual way" does not bind partnership); *id.* at ¶ 9(4) ("No act of a partner in contravention of a restriction on his authority shall bind the partnership to

persons having knowledge of the restriction.").

Bane seems to be inviting this court to imply a right of action from ¶ 9(3)(c) for persons aggrieved by unauthorized acts of partners that make it impossible for the partnership to carry on its obligations. The Illinois courts imply rights of action from Illinois statutes when, under the totality of the circumstances, it appears that (1) the plaintiff is a member of the class for whose benefit the Illinois legislature enacted the statute; (2) implication of the right is consistent with the underlying purpose of the statute; (3) the plaintiff's claimed injury is one which the Illinois legislature designed the statute to prevent; and (4) a private right of action is necessary to effectuate the purposes of the statute. See *Sawyer Realty Group, Inc. v. Jarvis Corp.,* 89 Ill.2d 379, 386–91, 59 Ill.Dec. 905, 908–11, 432 N.E.2d 849, 852–55 (1982).

This court is not confident that the Illinois courts would find the right of action that Mr. Bane seeks here. From the language of ¶ 9 it appears that there are three groups of beneficiaries: active partners, who receive the power to act on behalf of the partnership in the normal course of business; the partnership (and by extension, all of the partners individually), which is protected from liability for unauthorized acts; and certain persons with whom a partner transacts certain kinds of business, who are permitted to rely on the partners' actions and, in some cases, enforce an obligation against the partnership. Mr. Bane falls into none of these groups. Bane no longer is an Isham partner, nor was he a partner at the time Isham dissolved. He also has not transacted business with an Isham partner in reliance on that partner's authority as an agent for the partnership. As he alleges in his complaint, whatever arrangement he had was directly with the Isham partnership. See Complaint at ¶ 3 (Retirement Plan was Is-

---

**2.** Defendants Miller, Rosso, and Yolles originally filed this motion. Defendants King, Ferguson, and Carson have joined in it and added points of their own. Many of these points raised factual issues that this court may not consider on a motion to dismiss. Others may have merit, but because this court will grant the defendants' motion on grounds applicable to all of the defendants, the court will not address King, Ferguson, and Carson's specific objections to Bane's complaint.

ham's plan); *id.* at ¶ 8 (implied agreement with Isham to continue the affairs of the firm). This court thus concludes that a person who is aggrieved by the dissolution of a partnership does not have a right of action against that partnership or its partners under ¶ 9(3)(c) of the Illinois Uniform Partnership Act, unless that person falls into one of the groups listed above.

█ This court now turns to ¶¶ 13–15, which speak more directly to partnership and partner liabilities. These paragraphs provide:

¶ 13. Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his co-partners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

¶ 14. The partnership is bound to make good the loss:

(a) Where one partner acting within the scope of his apparent authority receives money or property of a third person and misapplies it; and

(b) Where the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership.

¶ 15. All partners are liable:

(a) Jointly and severally for everything chargeable to the partnershp under [paragraphs] 13 and 14.

(b) Jointly for all other debts and obligations of the partnership; but any partner may enter into a separate obligation to perform a partnership contract.

Claiming a right of action from these provisions is tantamount to putting the cart before the horse. A person cannot "violate" ¶¶ 13–15 unless (1) a predicate wrong has occurred, (2) a partner or the partnership is liable for that wrong under ¶¶ 13–15, and (3) such partner or the partnership has not discharged his, her, or its liability. But Mr. Bane has not yet established that by a "wrongful act or omission of any partner acting within the ordinary course" of Isham's business, or with the authority of Isham's partners, there has been a loss or injury for which that partner is liable. Bane also has not yet shown that Isham or one of its partners has taken his money or property and misapplied it, or that Isham owes him a debt or obligation. Simply put, ¶¶ 13–15 do not become relevant to this case unless and until Bane establishes one of the wrongs alleged in Counts 2–4. Independent of these counts, ¶¶ 13–15 have no significance.

### Breach of Contract

█ In Count 2, Bane alleges that the defendants breached "their express and implied agreement under the Retirement Plan to so manage the affairs of [Isham] that [Isham] would meet its obligation to [Bane] under the Retirement Plan." Bane's contention is not novel. There are many reported cases in Illinois involving persons aggrieved by the termination or amendment of employee benefit plans. All of these cases hold that, in general, a court must construe a written plan as it would construe any other written contract. See, for example, *Guinzy v. Curtice Burns, Inc.*, 28 Ill.App.3d 398, 327 N.E.2d 284 (1975); *Gross v. University of Chicago*, 14 Ill.App.3d 326, 302 N.E.2d 444 (1973). Upon examining the Retirement Plan, this court finds no express provision requiring Isham's partners to manage the firm so as to provide retirement benefits to Mr. Bane or his spouse beyond the termination of the Plan.[3]

---

3. In supplemental briefs filed as to another issue in this case, Bane contends that §§ 2.1 and 5.1 of the Plan are unqualified promises to pay benefits. This court disagrees. Section 2.1 says in full: *"Firm to Pay Benefits.* As provided in this Plan, the Firm will provide benefits to Qualified Partners and, in circumstances provided in

Article V of this Plan, their surviving spouses." This section does not provide for unqualified payment, as the payments are "as provided" in the Plan. The Plan allows for termination of benefits in §§ 8.1 and 8.4. Similarly, § 5.1 allows for payment of "benefits under this Plan...." This suggests too that all benefits are

If there is any such promise between Bane and these defendants, it must arise by implication. The defendants contend that the terms of the Plan providing for termination prevent this court from interposing implied terms that contradict or modify the Plan's express terms, citing the holding of the Illinois Supreme Court in *Rubens v. Hill*, 213 Ill. 523, 539–40, 72 N.E. 1127, 1131–32 (1904). This rule would control this court's disposition of Count 2 were there an express undertaking in the Plan regarding Isham's duties with respect to the management of its business, but there is no such provision. The defendants lose this argument precisely for the same reason that Bane lost the argument above: the Plan simply does not discuss the duties of Isham's partners with respect to management of the firm, either before or after termination of the Plan.[4]

■ Under Illinois law, contract terms implied in law can supplement express terms. See, for example, *Foster Enterprises v. Germania Fed. Sav.*, 97 Ill. App.3d 22, 31, 52 Ill.Dec. 303, 308, 421 N.E.2d 1375, 1380 (1981) (express contract did not contain a term negating a promise of good faith, and so court could imply promise of good faith). There are two broad categories of terms which are implied in contracts under Illinois law: Those incorporating "the law at the time and place of the making of the contract," *Schiro v. W.E. Gould & Co.*, 18 Ill.2d 538, 544, 165 N.E.2d 286, 290 (1960), and those reflecting "[i]nferred intentions, necessarily implied from the express provisions" of the contract. *Stanley v. Chastek*, 34 Ill. App.2d 220, 236, 180 N.E.2d 512, 520 (1962); see also *Barnes v. Am. Brake-Beam Co.*, 238 Ill. 582, 591, 87 N.E. 291, 294 (1909) ("The law supplies the want of express agreements by necessary implications, and a contract includes not only what the parties say in it, but all those things which the law implies as a part of it.").

■ Mr. Bane has not referred this court to any Illinois law in effect at the time Isham adopted the Retirement Plan that requires the managers of a business to operate that business so as to prevent termination of payments to retirees or pensioners. In his brief in opposition to this motion, Bane claims that "modern concepts of employer obligations with respect to the binding effect of retirement plans ... (as in ERISA)" suggest that there is such an obligation, but Bane fails to indicate any specific case or statute under either federal or Illinois law that supports this claim. As the court in *Schiro* noted, the rationale for the rule that an express contract includes the law existing at the time and place of the making of the contract "is that the parties to the contract would have expressed that which the law implies 'had they not supposed that it was unnecessary to speak of it because the law provided for it.'" *Schiro*, 18 Ill.2d at 544, 165 N.E.2d 286, quoting 12 I.L.P. 399 (1953). This court is reluctant to accept a suggestion that the promise alleged by Bane was part of federal or Illinois law in 1985 when Bane cannot cite to anything in federal or Illinois law in effect even today.

■ Any implied promise thus would have to come as a result of its being an inferred intention, or a promise necessary to performance of the Retirement Plan. There are many types of provisions that the Illinois courts have deemed to be necessary to the performance of particular contracts. Building contractors, for example, usually are under an "implied obligation to specify the use of reasonably good materials, to perform [their] work in a reasonably workmanlike manner, and in such a way as reasonably to satisfy such requirements as [they] had notice the work was required to meet." *Bd. of Educ. v. Del Bianco & Assoc.*, 57 Ill.App.3d 302, 308, 14 Ill.Dec. 674, 679, 372 N.E.2d 953, 958 (1978). A physician or dentist ordinarily makes an

subject to all of the Plan's provisions, including §§ 8.1 and 8.4.

**4.** The defendants' argument conceivably could have force if this court were to consider the effect of the express termination provisions of

Isham's partnership agreement on its duties under the Retirement Plan. That partnership agreement is not contained in Mr. Bane's complaint, and so it would be improper for the court to consider it on this motion.

implied agreement to "treat his patient with requisite skill and care in exchange for payment by the patient of the ordinary professional fee charged for the services rendered." *Cirafici v. Goffen*, 85 Ill. App.3d 1102, 1105, 41 Ill.Dec. 135, 137, 407 N.E.2d 633, 635 (1980).

The Illinois courts have never held that a promise to run a business so as to prevent the termination of pension payments is necessary to the operation of a pension plan. In fact, the only case cited by either side in this dispute suggests that employers need not operate their businesses until all potential claims under their voluntary pension plans are fully provided for. See *Cowles v. Morris & Co.*, 330 Ill. 11, 161 N.E. 150 (1928). Mr. Bane argues that this case is outdated, but he cites no authority that shows that *Cowles* is no longer the law. In fact, this court's research indicates that absent express language that the employer will pay benefits past termination of the business, employers may terminate their business and thereby cease payment of benefits under non-contributory plans freely. See generally Annot., 42 A.L.R.2d 461, 483–86 and supp.

There are provisions, of course, that are implied in every contract. These include "the customs, practices, and definitions which are commonly understood and accepted by the parties," *Colgan v. Rae–Ann Electric Co.*, 91 Ill.App.3d 386, 390, 47 Ill. Dec. 227, 230, 414 N.E.2d 1343, 1346 (1981), and the promise of fair dealing and good faith, see *Foster Enterprises*, 97 Ill.App.3d at 28, 52 Ill.Dec. 303, 421 N.E.2d 1375. Bane makes no allegation that the implied promise stemmed from the customs or practices of Isham. He does argue, however, that Isham and its partners breached their duty of good faith and fair dealing in bringing about the destruction of Isham.

Bane's argument as to Isham and the defendants' bad faith raises an interesting question as to when and how the Illinois courts treat the implied contractual duty of good faith and fair dealing. Sometimes the courts have employed the principles underlying the duty under the guise of a rule of construction, stating that when a provision is ambiguous, the court will not adopt the interpretation which imputes bad faith to a party. See, for example, *Martindell v. Lake Shore Nat. Bank*, 15 Ill.2d 272, 286–87, 154 N.E.2d 683, 690 (1958); *Carrico v. Delp*, 141 Ill.App.3d 684, 689–90, 95 Ill.Dec. 880, 884, 490 N.E.2d 972, 976 (1986). A more common use of the duty, one that is implied in *Martindell* and *Carrico*, is to check the exercise of a party's discretion under a contract. In a lengthy examination of the duty under Illinois law, the court in *Dayan v. McDonald's Corp.*, 125 Ill.App.3d 972, 991, 81 Ill.Dec. 156, 170, 466 N.E.2d 958, 972 (1984), described the limitation in this way:

> [A] party vested with contractual discretion must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.

There are no reported Illinois cases which discuss the duty of good faith and fair dealing in the context of termination of pension benefits. What is clear from other cases which discuss the duty, see, for example, *Dayan*, 125 Ill.App.3d at 991–94, 81 Ill.Dec. 156, 466 N.E.2d 958 (applying duty to franchise agreement); *Chariot Holdings, Ltd. v. Eastmet Corp.*, 153 Ill.App.3d 50, 106 Ill.Dec. 285, 505 N.E.2d 1076 (1987) (real estate contract); *Criscione v. Sears, Roebuck & Company*, 66 Ill.App.3d 664, 23 Ill.Dec. 455, 384 N.E.2d 91 (1978) (at-will employment contract), is that the duty applies not in an overarching fashion, covering every aspect of the parties' relationship, but rather it limits one party's discretion where a contract gives the party that discretion. As the *Dayan* court noted, the courts employ the duty to protect the reasonable expectations of the parties. See *Dayan*, 125 Ill.App.3d at 993, 81 Ill.Dec. 156, 466 N.E.2d 958. The Illinois courts do not use the duty to overcome the parties' expectations, unlike doctrines which prevent parties from entering into non-mutual contracts, contracts which are unconscionable, or which violate public policy. Were this court to employ the good faith doctrine improperly, the court risks destroying the legitimate expectations of the parties, as

well as substituting its judgment for those who are better able to assess their positions. See generally Comment, What's So Good About Good Faith? The Good Faith Performance Obligation in Commercial Lending, 55 U.Chi.L.Rev. 1335 (1988).

This court thus returns to the Plan, the contract which Bane claims the defendants breached. There is only one relevant clause that grants Isham and its partners discretion as to payment of benefits under the Plan: Section 8.1. This clause grants Isham and its partners the discretion to dissolve the firm and thereby terminate payment of benefits. Under Illinois law, Isham and its partners must exercise their discretion to dissolve Isham "reasonably and with proper motive, and may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties" to the Retirement Plan. *Dayan*, 125 Ill.App.3d at 972, 81 Ill.Dec. 156, 466 N.E.2d 958. If Isham and its partners exercised their power to dissolve the firm reasonably and with proper motive, Bane cannot sue for breach of Isham and its partners' duty of good faith and fair dealing under the Retirement Plan.

Bane's complaint does not allege that the defendants acted unreasonably, improperly, arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties to Isham's retirement plan in dissolving Isham on April 30, 1988. In fact, the Complaint alleges that the departure of key partners, the loss of important clients, and the failed merger with Reuben & Proctor caused the firm to fall on hard times, and that is why Isham dissolved. There is nothing unreasonable, improper, arbitrary, or capricious about the decision of a partnership to dissolve for these reasons. Moreover, this court cannot reasonably infer from the facts alleged in Bane's complaint that the parties to the Retirement Plan expected Isham not to dissolve when faced with hardships such as those alleged.

It may have been "unreasonable" for the defendants to do the things which Bane alleges led to Isham's financial ruin. This court cannot construe the Retirement Plan,

however, to cover those activities. Rather, the Plan as alleged restricted Isham's decisions only with respect to the Plan itself. Bane's right to challenge Isham's decisions extends only to those decisions made with respect to the Plan. As Bane himself has alleged, Isham dissolved for reasons wholly unrelated to the Plan. For this reason, Bane has not stated a claim in Count 2 upon which this court can grant relief.

*Breach of Fiduciary Duty*

The court now turns to Count 3, where Bane alleges that the defendants, "as members of the Managing Council [of Isham] and draftsmen and promulgators of the Retirement Plan, and as senior members of [Isham], were fiduciaries with respect to the management of said Retirement Plan for those entitled to benefits thereunder." Bane contends that he dealt with the defendants "knowing them to be fiduciaries with respect to his interests under the Retirement Plan," but that the defendants "wantonly breached their fiduciary duties to [him] by causing [Isham] to dissolve, thereby causing pension payments to [him] to terminate." Complaint at ¶¶ 16–18.

Bane contends that by reason of these actions, the defendants acted contrary to the Illinois Uniform Fiduciaries Act, Ill.Rev.Stat. ch. 17, ¶¶ 2001 et seq. Bane has not indicated in his complaint which provision of the Act the defendants have violated, and nearly admits that the Act does not pertain to the defendants' conduct in his brief in opposition to the defendants' motion. In that brief he moves away from the language of the complaint to allege that the defendants breached their obligation to him under the Uniform Fiduciaries Act, the Uniform Partnership Act, and the common law. Normally the court would not recognize a party's attempt to amend his or her complaint in this manner, as it is contrary to the Federal Rules of Civil Procedure. See Rule 15(a), Fed.R.Civ.P. (describing proper method of amendment). But by presenting a claim under the Illinois Uniform Fiduciaries Act, Bane may have automatically stated claims under the common law of Illinois. See Ill.Rev.Stat. ch. 17, ¶ 2011 ("In any case

not provided for in this Act the rules of law and equity, including the law merchant and those rules of law and equity relating to trusts, agency, negotiable instruments and banking, shall continue to apply."). Since the defendants have fully briefed the issue of fiduciary relations, including those arising under Illinois common law, this court will construe the complaint as alleging a common law claim of breach of fiduciary duty and consider whether Bane has stated a claim upon which this court can grant relief.[5]

The initial problem that this court encounters when addressing Bane's common law claim for breach of fiduciary duty is deciding exactly what type of relief he seeks. There are many possibilities. He could be asserting an action for an accounting and enforcement of a trust. See, for example, Ill.Rev.Stat. ch. 106½, ¶ 21 (suggesting accounting and trust enforcement as remedies for breach of partner's obligation to another partner). He could be asserting an action for enforcement of a constructive trust or restitution. See, for example, *Bremer v. Bremer*, 411 Ill. 454, 104 N.E.2d 299 (1952) (breach of fiduciary relation gives rise to action for constructive trust); *Graham v. Mimms*, 111 Ill.App.3d 751, 67 Ill.Dec. 313, 444 N.E.2d 549 (1982) (breach also can give rise to action for restitution). In some instances a party also can sue in tort for a breach of fiduciary relation. See *id.* at 769, 67 Ill.Dec. 313, 444 N.E.2d 549.

■ The court could try to parse Mr. Bane's complaint and his briefs on this motion to determine which remedies he seeks. The court can avoid this task, however. This is because before Mr. Bane can bring any of these actions, he must properly allege that a fiduciary relation existed between himself and the defendants. This he has not done. Bane argues that partners are fiduciaries. It is true that all partners are fiduciaries for one another. See *Couri v. Couri*, 95 Ill.2d 91, 98, 69 Ill.Dec. 117, 120, 447 N.E.2d 334, 337 (1983). It is further true that some people who are partners have fiduciary obligations to some persons who are not in the partnership. See, for example, *In re Crane*, 96 Ill.2d 40, 70 Ill.Dec. 220, 449 N.E.2d 94 (1983) (partner in law firm mishandled funds from client's settlement; attorney disciplined for breach of fiduciary duty owed to client). But it is not true that all partners owe general fiduciary obligations to everyone. As with any obligation, a fiduciary obligation is particular. It is owed to someone when particular conditions are met.

■ Bane's complaint states that Bane retired as an Isham partner in December 1985. See Complaint at ¶ 3.[6] According to Illinois law, retirement of a partner from a partnership results in the dissolution of the partnership. See Ill.Rev.Stat. ch. 106½, ¶¶ 29, 31(1)(b). Dissolution works to end the fiduciary relationship, see *Bluestein v. Davis*, 86 Ill.App.2d 61, 67, 230 N.E.2d 61, 64 (1967); *Babray v. Carlino*, 2 Ill.App.3d 241, 250–51, 276 N.E.2d 435, 442 (1971), except for purposes of an accounting or the winding up of the partnership's affairs, see *Jackson v. Jackson*, 343 Ill.App. 31, 45–46, 98 N.E.2d 169, 176 (1951). Bane cites three cases from juris-

---

5. The court will not construe Count 3, however, as incorporating claims under the Uniform Partnership Act, as the Uniform Fiduciaries Act does not contain a provision incorporating or saving claims under other Illinois statutes. This should not harm Mr. Bane's case, as he alleged claims under the Uniform Partnership Act in Count 1, which this court discussed above.

6. Bane suggests in several other places in his complaint, as well as in his briefs, that his position as a partner in Isham terminated upon his retirement. One could read the Plan as suggesting that, even though a partner is "retired," he or she may still be a partner. See Plan at 2 (definitions of "Joint and Survivor

Election," "Partner," "Qualified Partner," "Retirement," and "Surviving Spouse"); *id.* at § 2.5 (no benefits paid to "any Partner who leaves the Firm (other than by reason of dying, being permanently disabled from the practice of law or becoming Of Counsel with the consent of the Managing Council) or whose partnership is withdrawn as provided in the Firm's Partnership Agreement, in either case before Retirement"); *id.* at § 6.1 (forfeiture for certain activities undertaken by a "retired Partner."). Still, this court will abide by Bane's representations, and not treat him as partner for purposes of this motion.

dictions other than Illinois in an effort to suggest that a partner's fiduciary duties persist indefinitely, but the holding of each of these cases is entirely consistent with the rule and its narrow exception stated above. See *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal.App.3d 200, 194 Cal.Rptr. 180 (1983) (action of winding-up partners against co-partner); *Oliker v. Gershunoff*, 195 Cal.App.3d 1288, 241 Cal.Rptr. 415 (1987) (winding-up partners owe fiduciary duties to one another); *Resnick v. Kaplan*, 49 Md.App. 499, 434 A.2d 582 (1981) (partners upon dissolution owe fiduciary duties toward one another in accounting and in winding up partnership's affairs).

■ Since Bane has stated that he is no longer a partner, and since he was not a partner at the time Isham wound up its affairs in April 1988, the defendants did not owe him a fiduciary duty under Illinois partnership law. Bane alludes in his briefs to another way that a fiduciary duty can arise, see, for example, *Wold v. Wold*, 43 Ill.App.3d 773, 777, 2 Ill.Dec. 460, 463, 357 N.E.2d 627, 630 (1976) ("Where a fiduciary ... relationship does not exist as a matter of law, ... it may nonetheless exist where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another who, as a result, gains an influence or superiority over him"), but his complaint does not posit that he reposed trust and confidence in the defendants, or that they gained influence or superiority over him as a result. This court thus must dismiss Count 3 for failure to state a claim upon which this court can grant relief.

*Gross Negligence*

All of this leaves Mr. Bane only with Count 4, his claim under a theory of gross negligence. The defendants contend that the doctrine of *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), prevents Bane from recovering the damages he seeks un-der a theory of tort liability. Bane contends that the defendants misconstrue *Moorman* and its progeny, and that he can seek to recover what he would have received under Isham's Retirement Plan.

The Illinois Supreme Court held in *Moorman* that a company that purchased a defective storage tank could not recover "solely economic loss[es]" under a theory of strict liability. *Moorman*, 91 Ill.2d at 81, 61 Ill.Dec. 746, 435 N.E.2d 443. The court defined "economic loss" in part as " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— without any claim of personal injury or damage to other property....' " *Id.* at 82, 61 Ill.Dec. 746, 435 N.E.2d 443, quoting Note, Economic Loss in Products Liablity Jurisprudence, 66 Colum.L.Rev. 917, 918 (1966). The court rested its holding on the principle that the law of contracts, and not tort, was better suited to analysis of claims relating to "disappointed expectations." *Moorman*, 91 Ill.2d at 81–86, 61 Ill.Dec. 746, 435 N.E.2d 443.[7]

■ Bane first contends that this court should confine the *Moorman* doctrine to cases involving defeated commercial expectations, relying on the Illinois Supreme Court's later construction of *Moorman* in *Anderson Elec. v. Ledbetter Erec. Corp.*, 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986). In *Anderson* the court pointed out that *Moorman* left the plaintiff in that case with his remedies under the Uniform Commercial Code. The *Anderson* court noted, however, that the availability of alternative contractual remedies was not pertinent to whether a plaintiff could recover economic losses under a theory of tort liability. *Id.* at 152–53, 104 Ill.Dec. 689, 503 N.E.2d 246. While it is true that all of the cases in which the Illinois Supreme Court has barred recovery of economic losses have involved commercial contracts, see *Moorman*, 91 Ill.2d at 69, 61 Ill.Dec. 746,

---

7. The only instances in which the *Moorman* court held that a person could claim economic losses in tort were where one intentionally makes false representations, or where a supplier of information used to guide others in business transactions makes negligent misrepresentations. See *Moorman*, 91 Ill.2d at 88–89, 61 Ill.Dec. 746, 435 N.E.2d 443. Bane does not claim that these exceptions cover his claims.

435 N.E.2d 443; *Morrow v. L.A. Goldschmidt Assoc., Inc.*, 112 Ill.2d 87, 96 Ill. Dec. 939, 492 N.E.2d 181 (1986); *Anderson*, 115 Ill.2d at 146, 104 Ill.Dec. 689, 503 N.E.2d 246, Bane has made no arguments as to why this court should narrow the broad rule barring recovery of economic losses to commercial contracts only. The inability of Illinois' law of torts to account for the expectations of parties, and the perceived superiority of its law of contracts in handling the same, remains regardless of the context. See *Wait v. First Midwest Bank/Danville*, 142 Ill.App.3d 703, 710–11, 96 Ill.Dec. 516, 523, 491 N.E. 2d 795, 802 (1986) (applying *Moorman* doctrine to negligence counts in case involving alleged breach of oral promise to loan money). Further, it would be difficult to draw a logical line between "commercial" and "noncommercial" cases. As indicated above, the Illinois Supreme Court has rejected a plausible division between those cases covered by the Uniform Commercial Code and those that are not. Mr. Bane has not suggested an alternative distinction, and so this court will not ruminate on the issue further: the *Moorman* doctrine applies to this case for purposes of this motion.

 Bane then contends that he is not seeking recovery for economic loss, but rather damages for injuries to his "property rights" in payments under Isham's retirement plan. Just what is property for purposes of the *Moorman* doctrine is admittedly unclear. In *Moorman* the court was able to employ the phrase "damage to other property" because the case involved a defective device that could cause damage to property apart from the device itself. Later the court seemed to suggest that a party could recover for damage to the property itself when the damage was the result of a " 'sudden and dangerous occurrence best served by the policy of tort law.' " *Foxcroft Townhome Own. v. Hof. Rosner Corp.*, 96 Ill.2d 150, 156, 70 Ill.Dec. 251, 254, 449 N.E.2d 125, 128 (1983), quoting *Moorman*, 91 Ill.2d at 85, 61 Ill.Dec. 746, 435 N.E.2d 443.

This court need not probe the outer limits of the concept of property under the *Moorman* doctrine to resolve the issues in this case. While Bane may have a property right in payments under the Isham Retirement Plan, the complaint concedes that Bane is claiming "the amount that [Bane and his wife] were entitled to receive under the Isham Lincoln & Beale Retirement Plan." As such, Bane is seeking recovery of what he bargained for, and the Illinois courts are unanimous in holding the *Moorman* bars such recovery under a theory of negligence. See *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 177, 65 Ill.Dec. 411, 414, 441 N.E.2d 324, 327 (1982) ("To recover in negligence there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects."); *Morrow*, 112 Ill.2d at 98, 96 Ill.Dec. 939, 492 N.E.2d 181 ("Simply characterizing a breach of contract as 'wilful and wanton' does not change the fact that plaintiffs are only seeking recovery for harm to a contract-like interest."); *Scott & Fetzer v. Montgomery Ward*, 112 Ill.2d 378, 98 Ill.Dec. 1, 493 N.E.2d 1022 (1986) (reaffirming *Moorman*, and distinguishing it from case where property was consequentially damaged as a result of defective product; property owners were not purchasers of defective product, but were by-standers).

Bane thus has not stated a claim in Count 4 upon which this court can grant relief. Because liability under one of the theories stated in Counts 2–4 was necessary before Bane could state a claim under a theory of partner liability, this court must dismiss Count 1 also. The motion of the defendants to dismiss Bane's complaint under Rule 12(b)(6) is thus granted.