929 F.2d 703
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Richard J. YOUNG, Plaintiff-Appellant,
v.
CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, Robert E. Kroner,
Bruce K. Knox, et al., Defendants-Appellees.
 No. 90-3002.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 13, 1991.
Decided April 5, 1991.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 90 C 254, George M. Marovich, Judge.
 
 
 1
 D.N.Ill.
 
 
 2
 AFFIRMED.
 
 
 3
 Before MANION, KANNE, Circuit Judges, and GRANT, Senior District Judge*.
 
 ORDER
 
 4
 Richard J. Young sued Connecticut Mutual Life Insurance Company (CML) for breaching an agency contract between it and Young. He also sued CML, Robert Kroner, Bruce Knox, and Philip Davis in tort for interfering with his prospective economic advantage. The district court dismissed Young's suit for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). We affirm.
 
 
 5
 Young's complaint alleged the following facts, which we must accept as true. Young is an insurance agent who specializes in designing and selling compensation packages to law firms, accounting firms, and other professional groups. In January, 1980, Young entered into a "Career Contract" with the Hunken Agency (a CML general agent) and CML. This contract made Young a CML agent and gave him the authority to sell CML's products. Young was a successful agent, and CML rewarded him by appointing him as a full-time agent supervisor in January, 1989.
 
 
 6
 Around September 1987, CML together with Knox, Kroner, and Davis developed a new life insurance product known as the Consortium Group Flexible Premium Life Insurance Policy (Consortium). Consortium is a unique product aimed at professional groups or corporations with a minimum of fifty partners or executives, the same types of clients with whom Young principally dealt. Consortium is far superior to any other product CML offers.
 
 
 7
 After developing Consortium, CML, Knox, Kroner, and Davis agreed that Knox, Kroner, and Davis would market it exclusively. Consequently, CML did not make Consortium available to Young to market. Young did not know Consortium existed until March 1989, when a prospective customer told him about it. Even after Young found out about Consortium, CML did not make it available to him, and denied him access to certain computer software necessary to market it.
 
 
 8
 In January 1990, Young sued CML, Knox, Kroner, and Davis. Count I of Young's complaint alleged that CML breached its contractual duty by failing to make Consortium available to him to market. Count II alleged that by having Knox, Kroner, and Davis exclusively market Consortium, and by not disclosing Consortium to Young, all the defendants interfered with Young's prospective economic advantage by preventing him from selling insurance to clients to whom he could have sold Consortium and other products.
 
 
 9
 The district court dismissed Count I because the Career Contract imposed no duty on CML to make all its products available to Young to sell. Since CML had no contractual duty to make Consortium available to Young, it did not breach the Career Contract by not making Consortium available. We agree.
 
 
 10
 Young argues that the following language in the contract creates CML's duty:
 
 
 11
 A. The Agent may solicit and procure applications for life insurance, disability insurance, annuity contracts and other products now or hereafter offered by the Company at such time and in such manner as he may determine, subject to the provisions of this Contract....
 
 
 12
 According to Young, the quoted language unequivocally establishes CML's duty to make all its products available to him. However, the quoted language does not such thing. The language Young cites merely establishes Young's authority as CML's agent to solicit applications for CML's products. This is apparent from the language'
 
 
 13
 § context: it is the first paragraph of a section entitled "Agent's Authority," a section that goes on to disclaim any other authority to act on CML's behalf. Nothing in the quoted language specifically imposes any duty on CML to make any particular product available to Young.
 
 
 14
 Young argues that we must imply CML's duty to make all its products available from the contact to effectuate the parties' "obvious" expectancy that Young would have "CML's broad line of products available to promote and sell...." However, it is not all that "obvious" to us that the Career Contract manifests a mutual expectation that Young have access to all of CML's products. Young suggests no reason why CML would want to cede its discretion to market its products as it sees fit, choosing between agents of varying resources and capabilities to market certain products, without so much as mentioning in the contract that it was ceding this discretion. Rather than giving Young a hammerlock on CML's marketing discretion, it is more likely the purpose of the Career Contract is simply to give CML another agent to market the products it needs marketed and to provide Young with products to sell and payment for what he does sell. Illinois law will supplement a contract with an implied term when that term reflects " '[i]nferred intentions, necessarily implied from the express provisions' of the contract." Bane v. Ferguson, 707 F.Supp. 988, 993 (N.D.Ill.1989) (quoting Schiro v. W.E. Gould & Co., 18 Ill.2d 538, 544, 165 N.E.2d 286, 290 (1960)), aff'd 890 F.2d 11 (7th Cir.1989). The duty Young seeks to impose on CML, while helpful to his business, is a necessary implication of neither the contract's authority provision nor the contract's general purpose.
 
 
 15
 Young complains that interpreting the contract to impose no duty on CML to make its products available to him is "oppressive and unreasonable" because it allows CML to "deny Young the right to sell its products altogether." This may be true (although CML has denied Young only one product, and Young continues, as far as we can tell, to be a successful CML agent), but it is irrelevant. The contract empowers Young to "solicit and procure" insurance applications but does not empower Young to accept those applications on CML's behalf and imposes no duty on CML to accept the applications Young solicits. See Contract Sec. 2C (CML may refund a premium "for any reason, in its sole discretion."). Moreover, Sec. 5A of the contract allows CML (and Young) to terminate the contract immediately, at any time, merely by giving written notice. Given that CML has no duty to accept the applications Young procures, and may terminate the contract at any time, the argument that it is "oppressive and unreasonable" to allow CML to deny Young access to certain products is unavailing.
 
 
 16
 Young finally argues that interpreting the Career Contract to not impose a duty on CML to make all its products available to him renders the contract illusory. We think not. CML has promised to pay Young a certain commission for what he sells. Young has agreed to meet production standards the Company might set. These promises bind the parties. If Young sells, CML must pay. It is true that CML might decide to withdraw all its products from Young. That is not what has happened in this case, however. There is no need to decide whether it would be necessary to infer some obligation on CML's part to make some of its products available to Young absent an express decision to terminate the contract. The only question before us is whether the Career Contract obligates CML to make all its products available to Young. We agree with the district court that it does not.
 
 
 17
 The district court also dismissed Count II of Young's complaint, which alleged that CML, Kroner, Knox, and Davis interfered with Young's prospective business relationships with potential clients. We agree with the district court's conclusion that Count II fails to state a claim. However, while we have no quarrel with the district court's reasoning on this issue, we prefer to base our decision on a different and somewhat simpler rationale.
 
 
 18
 An essential element of a tort claim for interference with prospective economic advantage is that the party alleging the interference must have had a "reasonable expectancy of entering into a valid business relationship...." Crinkley v. Dow Jones and Co., Inc., 67 Ill.App.3d 869, 385 N.E.2d 714, 720 (1979). Young argues that because the Career Contract gave him the right to sell all of CML's products, including Consortium, he had a reasonable expectation of selling Consortium absent the defendants' interference. As we have seen, however, the Career Contract imposed no duty on CML to make Consortium available to Young, and thus conferred on Young no right to sell Consortium. Since Young had no right to sell Consortium, he had no reasonable expectation of selling it to prospective customers.
 
 
 19
 Young also alleged in his complaint that since Consortium was superior to the products he had to offer, the defendants interfered with his opportunity to sell other products to potential customers. Competition, however, is not tortious unless unfair. See Candalaus Chicago, Inc. v. Evans Mill Supply Co., 51 Ill.App.3d 38, 48, 366 N.E.2d 319, 327 (1977); see also Restatement (Second) of Torts Sec. 768 (1979). Absent any contractual right to know of or market Consortium, Young's claim boils down to a claim that the defendants developed and marketed a better product than Young was able to market. It is not unfair competition to develop and market a better product than another person.
 
 
 20
 For the reasons stated above, the district court's decision is
 
 
 21
 AFFIRMED.
 
 
 
 *
 The Honorable Robert A. Grant, Senior Judge of the U.S. District Court for the Northern District of Indiana, is sitting by designation